**In the matter of the Commitment of K.F., Appellant–Respondent,**

v.

**ST. VINCENT HOSPITAL AND HEALTH CARE CENTER d/b/a St. Vincent Stress Center, Appellee–Petitioner.**

**No. 49A02–0812–CV–1165.**

Court of Appeals of Indiana.

July 22, 2009.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Kendra L. Conover, Angela M. Smith, Hall, Render, Killian, Heath & Lyman, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

K.F. appeals an order granting the petition, filed by St. Vincent Hospital and Health Care Center d/b/a St. Vincent Stress Center ("St. Vincent"), for her involuntary regular commitment.[1] K.F. asserts that there was insufficient evidence to establish that she was gravely disabled. We reverse.

### Facts and Procedural History

The evidence most favorable to the judgment reveals that sixty-two-year-old K.F. has been married for more than forty years to her husband, an attorney. Tr. at 87. Together, they have raised seven children and have eleven grandchildren. K.F.'s daily activities include cleaning the home, doing laundry, and making dinner. *Id.* at 89. She attends Mass weekly, bowls in a league, enjoys socializing, keeps up on current events, and does yard work. *Id.* at 88–90, 92.

Sometime in 2008, K.F.'s relatives noticed a change in her behavior. She began to go to a local bar three or four evenings per week and have a couple drinks and play games before returning home around

---

1. An involuntary commitment for a period to exceed ninety days is a "regular" commitment. See Ind.Code Ch. 12–26–7. In contrast, an involuntary commitment for a period of less than ninety days is a "temporary" commitment. *See* Ind.Code Ch. 12–26–6.

10:00 or 11:00 p.m. *Id.* at 67, 76–77. She was involved in five car accidents, maxed out a new credit card, and took steps to purchase a new home contrary to her husband's wishes. *Id.* at 11, 20, 46, 60–61, 67, 75–77. She admitted to drinking alcohol daily but not to driving while legally intoxicated. *Id.* at 26, 52, 63, 76, 103. She spoke of renewing her wedding vows, took her wedding dress to be cleaned and pressed, but then went to a hotel away from her husband for a weekend. *Id.* at 58. Other unusual behaviors included calling one of her daughters at 12:30 a.m. to advise her to fill up her gas tank, bringing home a woman from the bar to stay one night, and raising her voice and using colorful language toward an in-law. *Id.* at 58, 66, 69, 73. Recently diagnosed with bipolar disorder, K.F. did not wish to take her medication or to avoid alcohol. *Id.* at 10, 75, 84.

On August 21, 2008, K.F. was admitted to St. Vincent as an inpatient. On August 26, 2008, the court held an evidentiary hearing and found there existed clear and convincing evidence that K.F. was suffering from a mental illness, specifically bipolar disorder, and that she was gravely disabled and in need of custody, care, and treatment at St. Vincent. The court ordered K.F. committed to St. Vincent until November 24, 2008. However, K.F. was discharged to outpatient care on September 4, 2008. She was readmitted to St. Vincent inpatient care from September 10, 2008 through September 26, 2008. She was again readmitted to St. Vincent on November 20, 2008.

On November 24, 2008, the original end date for K.F.'s commitment, St. Vincent filed an application for emergency detention. Attached to the application was the physician's statement of Dr. Sanjay Mishra, the psychiatrist who treated K.F. at St. Vincent. Within that statement, Dr. Mishra had checked boxes indicating that K.F. was suffering from "a psychiatric disorder" and "alcoholism/addiction to narcotics or dangerous substances … which substantially disturbs Respondent's thinking, feelings, or behavior, and impairs Respondent's ability to function, [specifically,] verbalizing suicidal ideation with plan—manic behaviors." App. at 34. In the December 2, 2008 report following emergency detention, Dr. Mishra checked boxes for "bipolar disorder" and "gravely disabled." *Id.* The following day, the court ordered K.F.'s continued detention pending a hearing on St. Vincent's November 24 application.

On December 5, 2008, the court held an evidentiary hearing during which it heard testimony from Dr. Mishra, K.F., Keith Parrish (K.F.'s outpatient therapist), and several members of K.F.'s family. Dr. Mishra, Parrish, two of K.F.'s daughters, and one sister agreed that a regular commitment to St. Vincent was in K.F.'s best interest. Dr. Mishra opined that in order for treatment to succeed, K.F. needed to take her medications, keep her follow-up appointments, and discontinue the use of alcohol—none of which he believed she would do absent an order for involuntary commitment. That same day, the court issued an order for involuntary commitment, found that K.F. was "suffering from Bipolar disorder and alcoholism," marked the box for "gravely disabled," determined that K.F. was in need of placement in St. Vincent for a period "expected to exceed ninety (90) days," and required that a report by the head of St. Vincent or the attending physician be submitted to the court by no later than June 1, 2009 [2] for reevaluation. *Id.* at 7–8.

---

**2.** While it is possible that K.F.'s commitment has been terminated, no motion to dismiss her appeal has been filed. Indeed, her reply brief was file-stamped on June 5, 2009, four days after the June 1 evaluation date. Accordingly, we will address the issue raised.

## Discussion and Decision

Civil commitment is a significant deprivation of liberty that requires due process protections. *Commitment of L.W. v. Midtown Cmty. Health Ctr.*, 823 N.E.2d 702, 703 (Ind.Ct.App.2005). When reviewing the sufficiency of the evidence in commitment cases, we look only at the evidence and reasonable inferences therefrom most favorable to the trial court's judgment. *In re Commitment of A.W.D.*, 861 N.E.2d 1260, 1264 (Ind.Ct.App.2007), *trans. denied.* We may not reweigh the evidence or judge the credibility of the witnesses. *Commitment of M.M. v. Clarian Health Partners*, 826 N.E.2d 90, 96 (Ind.Ct.App.2005), trans. denied. "If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, we will affirm the order even if other reasonable conclusions are possible." *Id.; In re Commitment of Bradbury*, 845 N.E.2d 1063, 1065 (Ind.Ct. App.2006).

To demonstrate that a person should be committed involuntarily, a petitioner must show *"by clear and convincing evidence* that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind.Code § 12–26–2–5(e) (emphasis added). If at the end of a "hearing and the consideration of the record an individual is found to be mentally ill and either dangerous or gravely disabled, the court may enter" one of two orders. Ind.Code § 12–26–7–5(a). It may enter an order for the individual's "custody, care, or treatment, or continued custody, care, or treatment in an appropriate facility" or for the individual to "enter an outpatient therapy program under IC 12–26–14." *Id.* Such an order continues until the individual has been discharged from the facility, released from the therapy program, or an order is entered by the court to terminate the commitment or release the individual from the therapy program. Ind.Code § 12–26–7–5(b).

On appeal, K.F. does not challenge the finding that she is mentally ill, and there was no showing that she was dangerous. *See* Appellant's App. at 7 n. 3 (acknowledging that K.F. "is not dangerous to herself or others"). Rather, the crux of the case is whether St. Vincent presented sufficient evidence that K.F. was gravely disabled. Indiana Code Section 12–7–2–96 defines "gravely disabled" as

a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:

(1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or

(2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

As the wife of a supportive husband for forty-plus years, K.F. has food, clothing, shelter, and other essential human needs. Accordingly, St. Vincent does not hang its hat on the first definition of "gravely disabled." Rather, St. Vincent seems to focus on the second definition: "substantial impairment or obvious deterioration of judgment, reasoning, or behavior that results in an inability to function independently." *See* Ind.Code § 12–7–2–96. St. Vincent candidly admits that "no single behavior in isolation causes tremendous concern," but then asserts that the "culmination of K.F.'s manic behaviors in the context of her emotional liability, impairs her judgment, reasoning and behavior to the extent that she puts herself in harm's way." Appellant's Br. at 7.

St. Vincent relies heavily on Dr. Mishra's testimony about the "special danger" resulting from the combination of K.F.'s

bipolar disorder, necessary medication regime, and alcohol. Tr. at 26. Dr. Mishra opined that for K.F. to successfully manage bipolar disorder, she would need to take her medication as prescribed, attend follow-up appointments for treatment with a qualified mental health care provider, and refrain from consuming alcohol—none of which he believed she would do as an outpatient. *Id.* at 16, 17. However, when asked whether K.F. is unable to function independently, Dr. Mishra was equivocal. He replied, "Yeah, I mean she doesn't have a job, and she's never ... that's a tough one for me. I think it would be hard ... hard for us to believe that she could last very long, when the insight judgment is so impaired." *Id.* at 22.

Two of K.F.'s daughters opined that she could not function independently. *Id.* at 48, 61. Yet, K.F.'s husband and son disagreed and noted that they spent far more time with K.F. than the daughters/relatives who are in favor of commitment. *Id.* at 91–94, 97–98. Moreover, the evidence revealed that K.F. had inherited more than $60,000, thus making her increased spending more understandable. While K.F. never denied drinking alcohol at times, there was no evidence that she had ever driven while intoxicated or that any of her car accidents[3] had involved alcohol. K.F. disagreed with her late-in-life diagnosis of bipolar disorder and wished to seek a second opinion before taking serious medications—hardly a completely irrational reaction. Although K.F.'s husband acknowledged that she had some problems, he supported her financially and emotionally and was willing to facilitate outpatient therapy for her. With her seven children grown, K.F. had an active life of housework, cooking, church, bowling, and socializing.

In light of the above, we cannot say that St. Vincent presented clear and convincing evidence that K.F., as a result of mental illness, was in danger of coming to harm because she had a substantial impairment or an obvious deterioration of judgment, reasoning, or behavior resulting in the *inability to function independently.* While K.F. may have made some unusual decisions and/or displayed certain behaviors characteristic of a person with bipolar disorder, "her conduct presents too slender a thread to support an involuntary commitment." *Commitment of J.B. v. Midtown Mental Health Ctr.,* 581 N.E.2d 448, 452 (Ind.Ct.App.1991) (reversing involuntary commitment where respondent, who was suffering from alcoholism and had been arrested for driving while intoxicated, public intoxication, and public indecency, ran away into traffic and hitchhiked to avoid her mother); *see also In re Commitment of Steinberg,* 821 N.E.2d 385, 389 (Ind.Ct. App.2004) (reversing involuntary commitment where respondent went about activities of daily living while hospitalized and where he maintained an apartment with a roommate), *trans. denied.* Therefore, we reverse.

Reversed.

BRADFORD, J., and BROWN, J., concur.

---

3. Two of the five accidents were K.F.'s fault. Tr. at 78.