**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOEL M. SCHUMM**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**STACY WALTON LONG**
**LAUREN C. SORRELL**
Krieg DeVault LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE COMMITMENT OF S.D., | ) ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 49A02-1403-MH-157 |
| | ) |
| ADULT & CHILD MENTAL HEALTH CENTER, INC., | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald Zore, Judge
Cause No. 49D08-1401-MH-2471

**October 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

S.D appeals the trial court's order of an involuntary civil commitment. She raises one issue for our review: whether there was clear and convincing evidence proving that S.D. was dangerous to others or gravely disabled. Concluding there was sufficient evidence from which a reasonable person could conclude S.D. was dangerous to others, we affirm.

## Facts and Procedural History[1]

S.D., a fifty-four year old female, sufferers from Schizophrenia undifferentiated type. She has one son, but in 2007, her parental rights were terminated. This depressed her and has triggered extreme anger and frustration. She has blamed legal officials, judges, social workers, and mental health centers for her predicament. S.D. has been arrested for stalking her son, violating a restraining order, and resisting law enforcement. She has been hospitalized and put in jail for her behavior. S.D. does not realize the severity of her mental illness, and has become delusional. S.D. is required to take medicine to mitigate her symptoms.

Dr. Terry Parrish, the medical director and staff psychiatrist at Adult & Child Mental Health Center, Inc. ("Adult & Child"), first met S.D. during her time at the Johnson County

---

[1] The parties dispute whether certain statements in the petition for commitment and accompanying records may be considered to support S.D.'s involuntary commitment. S.D. argues that the documents are hearsay and cannot be considered as substantive evidence supporting a commitment order. In Commitment of M.M. v. Clarian Health Partners, 826 N.E.2d 90, 95 (Ind. Ct. App. 2005), trans. denied, we held that although a trial court may consider evidence produced at the hearing as well as any information contained in the record, see Golub v. Giles, 814 N.E.2d 1034, 1038 (Ind. Ct. App. 2004), trans. denied, it may not consider inadmissible hearsay contained therein as substantive evidence. To the extent the trial court may have relied on inadmissible hearsay evidence in this case, we find that error. Therefore, we consider only that evidence properly before the trial court in determining whether its decision is supported by clear and convincing evidence.

Jail in July 2013. At that time, Dr. Parrish reviewed S.D.'s medical records and gave her a psychiatric evaluation. Pat Anderson, a social worker at Adult & Child, also met S.D. at this time. Their goal was to facilitate a smooth transition back into society. Accordingly, when S.D. was released from jail in January 2014, she was placed in a semi-independent living facility provided by Adult & Child. During her time in jail and at the semi-independent facility, S.D. refused to take her medication. The facility was supposed to assist in giving the medication; however, after a short period of time at the facility, S.D. demonstrated out of control and erratic behavior such as yanking telephones out of the wall, which resulted in her hospitalization at Indianapolis Community North Hospital. This was where she resided at the time of her commitment hearing.

On January 30, 2014, Dr. Parrish filed a petition for an involuntary commitment of S.D. A commitment hearing was held on February 11, 2014. Three people testified at the hearing: Dr. Parrish, Pat Anderson, and S.D. After hearing the testimony, the trial court issued an Order of Regular Inpatient Commitment, placing S.D. in a State hospital for an indefinite period of time. S.D. now appeals her commitment.

Discussion and Decision

I. Standard of Review

Civil commitment is a significant deprivation of liberty that requires due process protections. When reviewing the sufficiency of the evidence in commitment cases, we look only at the evidence and reasonable inferences therefrom most favorable to the trial court's judgment. We may not reweigh the evidence or judge the credibility of the witnesses. If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, we will affirm the order even if other reasonable conclusions are possible.

3

In re Commitment of K.F. v. St. Vincent Hosp. & Health Care Ctr., 909 N.E.2d 1063, 1066 (Ind. Ct. App. 2009) (citations omitted).

## II. Sufficiency of the Evidence

In Indiana, a court may order a commitment in excess of ninety days for an individual who is mentally ill and either dangerous or gravely disabled. Ind. Code § 12-26-7-1. "In an involuntary commitment case, the petitioner must prove by clear and convincing evidence: '(1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate.'" In re Commitment of J.B., 766 N.E.2d 795, 799 (Ind. Ct. App. 2002) (quoting Ind. Code § 12-26-2-5(e)). Upon finding an individual eligible for involuntary commitment,

> [T]he court may enter either of the following orders:
>    (1) For the individual's custody, care, or treatment, or continued custody, care, or treatment in an appropriate facility.
>    (2) For the individual to enter an outpatient therapy program . . . .

Ind. Code § 12-26-7-5(a). "In order to carry its burden of proof, the petitioner is not required to prove that the individual is both dangerous and gravely disabled." M.L. v. Meridian Services, Inc., 956 N.E.2d 752, 755 (Ind. Ct. App. 2011) (emphasis in original).

The trial court found that S.D. suffers from Schizophrenia, a mental illness. That finding has not been challenged on appeal, and therefore, we review only whether the trial court had sufficient evidence to find S.D. is dangerous or gravely disabled. We do not, however, address the propriety of the trial court's findings with regard to whether S.D. was gravely disabled, because we conclude the evidence is sufficient to show she was dangerous.

"Because everyone exhibits some abnormal conduct . . . loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior. There is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom." In re Commitment of T.K., 993 N.E.2d 245, 249 (Ind. Ct. App. 2013) (citation and quotation marks omitted), trans. denied. Indiana Code section 12-7-2-53 defines dangerous as "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind. Code § 12-7-2-53. This court has further explained that:

> Dangerousness must be shown by clear and convincing evidence indicating that the behavior used as an index of a person's dangerousness would not occur but for the person's mental illness. This standard is not met by a showing that a person made a rational and informed decision to engage in conduct that may have entailed a risk of harm. Instead, the evidence must show that there is a substantial risk that the person will harm himself [or others] as a result of a psychiatric disorder which substantially disturbs the person's thinking, feeling, or behavior and impairs the person's ability to function.

In re Commitment of C.A. v. Ctr. for Mental Health, 776 N.E.2d 1216, 1218 (Ind. Ct. App. 2002) (citation and quotation marks omitted) (emphasis added). The determination of dangerousness has always been a question of fact for the trial court to decide, and it is not required to wait until an individual commits a physical act before making that determination. In re Commitment of T.K., 993 N.E.2d at 249.

In this instance, S.D.'s behavior cannot be described as simply idiosyncratic. See id. Dr. Parrish, a licensed psychiatrist, gave S.D. a psychiatric evaluation, in addition to examining and becoming familiar with her medical records. He testified that S.D. became violent with law officials, and she had threatened staff members at Adult & Child. Dr.

5

Parrish also testified that he heard S.D. make a "comment about somehow wanting to even the score" with the judge who ordered the termination of her parental rights. Transcript at 16. Dr. Parrish testified that S.D. threatened a judge so much that "a replacement judge was called in." Id. at 30. Pat Anderson, the social worker, also testified that S.D. is "going to get back at everyone who has wronged her." Id. at 38. While at the semi-independent living facility, "she became physically out of control and destructive of property, yanking a telephone out of the facility, needing to be restrained upon arrest." Id. at 18. Dr. Parrish believed that S.D.'s behavior was connected to her Schizophrenia, and without her medication, she was dangerous.

Based on the evidence presented at the commitment hearing, the trial court found that S.D. is not likely to comply with her prescribed medications and determined that S.D. is dangerous to others as defined in Indiana Code section 12-7-2-53. Looking at the evidence most favorable to the trial court's judgment, this is a conclusion that a reasonable person could have drawn. See In re Commitment of K.F., 909 N.E.2d at 1066.

Conclusion

Concluding the trial court had sufficient evidence to find that S.D. is dangerous to others, we affirm the involuntary commitment order.

Affirmed.

BAKER, J., and KIRSCH, J., concur.