ATTORNEYS FOR APPELLANT
Joel M. Schumm
Indianapolis, Indiana

Ruth A. Johnson
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Chadwick C. Duran
U.S. Dep't of Veterans Affairs
Indianapolis, Indiana



## In the
## Indiana Supreme Court

No. 49S02-1503-MH-138

IN THE MATTER OF THE CIVIL COMMITMENT OF T.K.,  *Appellant (Respondent)*,

v.

DEP'T OF VETERANS AFFAIRS,  *Appellee (Petitioner).*

Appeal from the Marion Superior Court, No. 49D08-9906-MH-582
The Honorable Gerald Zore, Judge

On Transfer from the Indiana Court of Appeals, No. 49A02-1310-MH-878

**March 19, 2015**

**Dickson, Justice**.

T.K. challenges the sufficiency of the evidence supporting his involuntary civil commitment. He was committed following a hearing on October 18, 2013. To obtain an involuntary regular[1] commitment of an individual, a "petitioner is required to prove by clear and

---

[1]In Indiana, an adult person may be civilly committed either voluntarily or involuntarily. Involuntary civil commitment may occur under four circumstances if certain statutorily regulated conditions are satisfied: (1) "Immediate Detention" by law enforcement for up to 24 hours, *see* Ind. Code

convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind. Code § 12-26-2-5(e) (2012). The trial court's order of commitment declared that, by clear and convincing evidence, T.K. was mentally ill and both dangerous and gravely disabled. The Court of Appeals affirmed in a memorandum decision. In the Matter of the Civil Commitment of T.K., No. 49A02-1310-MH-878, 3 N.E.3d 1090 (Ind. Ct. App. Jan. 30, 2014) (table), *clarified on reh'g*, 10 N.E.3d 100 (Ind. Ct. App. Apr. 3, 2014) (table). We now grant transfer and reverse.

On appeal, T.K. does not challenge the finding of his mental illness, but he contends that neither of the necessary alternative elements, "dangerous" or "gravely disabled," were proven by clear and convincing evidence. The Petitioner disagrees and argues to the contrary.

"[T]he purpose of civil commitment proceedings is dual: to protect the public and to ensure the rights of the person whose liberty is at stake." In re Commitment of Roberts, 723 N.E.2d 474, 476 (Ind. Ct. App. 2000), *trans. not sought*. The liberty interest at stake in a civil commitment proceeding goes beyond a loss of one's physical freedom, and given the serious stigma and adverse social consequences that accompany such physical confinement, a proceeding for an involuntary civil commitment is subject to due process requirements. *See* Addington v. Texas, 441 U.S. 418, 425–26 (1979). To satisfy the requirements of due process, the facts justifying an involuntary commitment must be shown "by clear and convincing evidence . . . . [which] not only communicates the relative importance our legal system attaches to a decision ordering an involuntary commitment, but . . . also has the function of reducing the chance of inappropriate commitments." Commitment of J.B. v. Midtown Mental Health Ctr., 581 N.E.2d 448, 450 (Ind. Ct. App. 1991) (citations omitted), *trans. denied*.

In reviewing the sufficiency of the evidence supporting a determination made under the statutory requirement of clear and convincing evidence, an appellate court will affirm if, "considering only the probative evidence and the reasonable inferences supporting it, without

---

§ 12-26-4 *et seq.*; (2) "Emergency Detention" for up to 72 hours, *see* Ind. Code § 12-26-5 *et seq.*; (3) "Temporary Commitment" for up to 90 days, *see* Ind. Code § 12-26-6 *et seq.*; and (4) "Regular Commitment" for an indefinite period of time that may exceed 90 days, *see* Ind. Code § 12-26-7 *et seq.* In this case, the petitioner sought T.K.'s regular commitment.

weighing evidence or assessing witness credibility, a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence." Bud Wolf Chevrolet, Inc. v. Robertson, 519 N.E.2d 135, 137 (Ind. 1988). This appellate standard of review applies in civil commitment decisions. *See* GPH v. Giles, 578 N.E.2d 729, 732–33 (Ind. Ct. App. 1991) ("In reviewing a claim of insufficient evidence in a commitment case, we keep in mind that commitment may be ordered only if the elements upon which the commitment is ordered are proven by clear and convincing evidence, and we consider only that evidence most favorable to the judgment, along with all favorable inferences therefrom."), *trans. denied*; Jones v. State, 477 N.E.2d 353, 360 (Ind. Ct. App. 1985) ("In reviewing a claim of insufficient evidence, we consider only that evidence most favorable to the judgment along with all favorable inferences therefrom, yet keep in mind that commitment may be ordered only upon a finding of clear and convincing evidence."), *trans. denied*; *see also* Cheek v. State, 567 N.E.2d 1192, 1196 (Ind. Ct. App. 1991) (citing Jones), *trans. not sought.*

Several recent decisions of the Court of Appeals, however, while perhaps reciting the phrase "clear and convincing," have not applied this standard of proof in their analysis but rather have affirmed civil commitment orders merely if such an order "represents a conclusion that a reasonable person could have drawn, even if other reasonable conclusions are possible." M.L. v. Meridian Servs., Inc., 956 N.E.2d 752, 755 (Ind. Ct. App. 2011), *trans. not sought*; *see also*, S.T. v. Cmty. Hosp. N., 930 N.E.2d 684, 688 (Ind. Ct. App. 2010), *trans. not sought*; K.F. v. St. Vincent Hosp. & Health Care Ctr., 909 N.E.2d 1063, 1066 (Ind. Ct. App. 2009), *trans. not sought*; J.S. v. Ctr. for Behavioral Health, 846 N.E.2d 1106, 1111 (Ind. Ct. App. 2006), *trans. denied*. We disapprove of this line of cases.

The issue presented in this case is whether, considering the probative evidence and reasonable inferences favorable to judgment, the trial judge could have found by clear and convincing evidence that T.K. was either dangerous or gravely disabled. "Dangerous" is "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind. Code § 12-7-2-53 (2012). "Gravely disabled" is defined as:

a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:

> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind. Code § 12-7-2-96 (2012).

Before the trial court, the Department of Veterans Affairs, as petitioner, presented only one item of evidence, the testimony of Dr. Joseph Bishara, a resident in psychiatry at the hospital where T.K. was admitted on an emergency detention. Dr. Bishara testified that T.K. came to him with "Chronic Paranoid Schizophrenia" and "Paranoid Personality Disorder." Tr. at 6. T.K. does not challenge either of these diagnoses on appeal. Regarding whether T.K. was either dangerous or gravely disabled, Dr. Bishara testified that T.K. is "paranoid over a wide range of . . . institutions as persecuting him, and targeting him," *id.* at 12, and that the main reason he was brought in on an emergency detention was that "he put flyers on people's windshields of somebody's criminal record which he wished to . . . hurt . . . or aggravate this person . . . to shame this person . . . [a]nd, then went into the Adult and Child Clinic, and started to scream at the staff in a manner that made them concerned." *Id.* at 5–6. Dr. Bishara also testified that T.K. was skeptical of the pharmaceutical industry as well as psychiatrists and hospitals, which T.K. feels are co-conspirators in "diagnosing . . . extra people with mental disorders for the purposes of getting money, lining their pockets." *Id.* at 5, 12. Dr. Bishara continued by saying that he had "observed aggressive, disruptive behavior towards [his] attending physician," that other "patients have complained about the—about being fearful of him, and of his aggression," and that workers at "the Adult and Child in Greenwood . . . felt threatened enough that they want to know if [T.K. is to be] released, because they're fearful of [T.K.'s] physical violent behavior . . . ." *Id.* at 12–13. Later, Dr. Bishara testified that T.K. is "estranged from all family support" but that T.K.'s son contacted Dr. Bishara to say that "he was concerned about his—his father's behavior, and his father's behavior has been erratic, and aggressive . . . . [T.K.'s son's] specific concern is . . . . that [his father] has some ammunitions expertise" from his time serving in the marines and "that [T.K.] mentioned use of violence in emails, and on Facebook." *Id.* at 16–17.

4

After this testimony relating what had been reported by others and commenting on T.K.'s medical record, which Dr. Bishara had reviewed, Dr. Bishara concluded:

> I personally did not believe that he would be a danger to self or others, but I have to—I'm not an expert. I don't know how to spell claymore explosives, let alone what one looks like, or anything like that. [So when T.K.'s son—someone with knowledge of explosives and knowledge of T.K.] has concerns about that, I have to believe that—it makes me raise an eyebrow. . . . [T.K.] doesn't understand that former marines . . . cannot yell things indiscriminately without being taken—held to a higher standard.

*Id.* at 20. Dr. Bishara continued by saying that medication and psychotherapy would be the recommended course of action for T.K. The Department had no further questions. Before cross-examination of Dr. Bishara, however, the trial court asked for clarification: "Doctor, I'm sorry I'm not really clear. Do you consider [T.K. a] danger to himself, and others, or just to others?" *Id.* at 23. To which Dr. Bishara responded, "to others . . . his biological son, the marine forced my hand that way." Dr. Bishara also said T.K. is gravely disabled because he has continuously refused treatment, has denied that he has any problem, and has been an aggressor in several areas of his life. The trial court continued by asking for more information about the flyers that T.K. had distributed, to which Dr. Bishara testified, "[M]y understanding is that [T.K.] distributed the flyer of the molester of his daughter . . . . it was the public or one time public record of the sexual offender. . . . And, this person is the husband of [T.K.'s] ex-wife." *Id.* at 23–24.

Other than Dr. Bishara, only T.K. testified at the commitment hearing. He testified that he was employed, had been working in his current job for five months, had started as a day laborer but earned permanent employee status, had been renting a home for going on 6 months, owned two vehicles and had a third vehicle on which he makes payments, received disability payments for injuries sustained while in military service, and had not taken medication for his mental illnesses since the last time he was committed (February to April 2013). T.K. further testified that when not committed, he goes to the gym every morning, does his own laundry, maintains a clean home, and maintains his own vehicles.

In light of the statutory prerequisite requirement that the necessary elements for a civil commitment be established by clear and convincing evidence, we hold that the evidence

presented was insufficient to establish that T.K. was "either dangerous or gravely disabled." Ind. Code § 12-26-2-5(e)(1).

> The clear and convincing standard is employed in cases 'where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims which have serious social consequences or harsh or far reaching effects on individuals . . . .'

In re G.Y., 904 N.E.2d 1257, 1260 n.1 (Ind. 2009) (quoting J.C.C. v. State, 897 N.E.2d 931, 934–35 (Ind. 2008)).

Regarding whether T.K. is dangerous, the Department's expert witness, Dr. Bishara, acknowledged, "I personally did not believe that he would be a danger to self or others . . . ." Tr. at 20. The doctor's personal uncertainty was further displayed when he responded to the trial court's direct question to him: "Doctor, I'm sorry I'm not really clear. Do you consider [T.K. a] danger to himself, and others, or just others?" *Id.* at 23. Dr. Bishara answered by saying that he would not have found dangerousness, but that T.K.'s estranged son, who did not testify at trial, "forced [his] hand in that way." *Id.* at 23.[2]

Likewise, the alternative element of "grave disability" was not established by clear and convincing evidence. Dr. Bishara's opinion that T.K. was gravely disabled was based on T.K.'s refusal of treatment, T.K.'s denial that he had any mental illness problem, and reports that T.K. had been aggressive in several areas of his life. Tr. at 23. The Legislature, however, has defined "gravely disabled" as a condition that causes an individual to (1) be unable to meet their basic food, clothing, and shelter needs or (2) be so obviously impaired in judgment, reasoning, or behavior that such individual is unable to function independently. *See* Ind. Code § 12-7-2-96.

---

[2] The chronological case summary reflects that T.K. has a substantial history of prior mental health proceedings before the trial court: an involuntary temporary commitment in June of 1999, an involuntary regular commitment in February of 2002, an involuntary temporary commitment in October of 2011, and an involuntary regular commitment in February of 2013. Appellant's App'x at 6-9. At least one of these involved the current trial judge, Hon. Gerald S. Zore, and it may be speculated that he recalled some facts regarding T.K. from the previous proceeding. The record of this present commitment, however, does not include any evidence from such prior proceedings. And the Department does not argue that the present commitment decision was based on evidence from such prior proceedings. Nor does the order of commitment make any reference to prior evidentiary facts but rather states it conclusions based "[u]pon evidence presented." *Id.* at 12. The only evidence presented at the hearing was the personal testimony of Dr. Bishara and T.K.

Both Dr. Bishara and T.K. testified that T.K. rents his own home, lives by himself, holds full-time employment, and owns two vehicles while making payments on a third. No evidence was presented to dispute his ability to provide food, clothing, or shelter for himself. As to whether T.K. was or is gravely disabled, the Department points to his refusal to admit he has a mental illness or to take medication, but such denial of illness and refusal to medicate, standing alone, are insufficient to establish grave disability because they do not establish, by clear and convincing evidence, that such behavior "results in the individual's inability to function independently." Ind. Code § 12-7-2-96(2). *See*, *e.g.*, K.F., 909 N.E.2d at 1066–67 (where commitment because of grave disability was found to be lacking clear and convincing evidence even though the committed person did not wish to take her medication because the testifying doctor was equivocal in his response regarding the committed person's ability to function independently, other opinion testimony was conflicting, and there was no concern about lack of food, clothing, or shelter), *trans. not sought*; J.S., 846 N.E.2d at 1112–13 (where commitment because of grave disability was affirmed on appeal because committed person refused to take medication and had lost a lot of weight because she refused to eat food for fear of it being poisoned), *trans. denied.*; Golub v. Giles, 814 N.E.2d 1034, 1037–39 (Ind. Ct. App. 2004) (where commitment because of grave disability was affirmed on appeal because evidence showed that the committed person refused to take medication and destroyed hotel property, made threats to family members, and lunged at a hotel manager), *trans. denied.*

In this case, at the time of the commitment hearing in October, T.K. had not been on medication since April, and in that six months T.K. had secured full-time employment and started renting a home. We do not weigh into the efficacy of whether medication is appropriate for T.K., but the evidence in this case has not clearly and convincingly shown that T.K.'s refusal to take medication and recognize his illness constitutes grave disability by resulting in such a "substantial impairment or an obvious deterioration of [T.K.'s] judgment, reasoning, or behavior that . . . [he is unable] to function independently." Ind. Code § 12-7-2-96(2). The most favorable testimony to the trial court's decision is that T.K. was aggressive, loud, talked in a coarse manner that was inappropriate, and proactively sought to shame someone by placing flyers on people's windshields. While we certainly do not condone such behavior and would like to see cooperation between T.K. and medical professionals, the evidence put forth by the

7

Department does not clearly and convincingly support the proposition that T.K. is gravely disabled.  T.K. made no physical outbursts, destroyed no property, did not put himself or others in actual danger with idiosyncratic behavior, and was not at risk of suffering a lack of food, clothing, or shelter.  Instead, at best, the evidence suggests that T.K.'s loud, boisterous, and rude public behavior harmed his reputation and made others not want to be around him.  That is not sufficient evidence to support a civil commitment on grounds of grave disability.[3]

### Conclusion

Clear and convincing evidence was not presented at T.K.'s civil commitment hearing to establish that he was either dangerous or gravely disabled, and we thus hold that the civil commitment of T.K. was improper and is hereby reversed.

Rush, C.J., and Rucker, David, Massa, JJ., concur.

---

[3] T.K.'s appeal also challenges the trial court's admission of and reliance on alleged hearsay evidence.  Because we find the evidence insufficient, even including such challenged evidence, we decline to separately address this claim.

8