## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2018, 6:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT:

Ernest P. Galos
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

Curtis T. Hill, Jr.
Attorney General of Indiana

Patricia C. McMath
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Involuntary Commitment of:

M.L.,

*Appellant-Respondent,*

v.

Oaklawn OSJ,

*Appellee-Petitioner.*

October 30, 2018

Court of Appeals Case No.
18A-MH-1114

Appeal from the St. Joseph Superior Court

The Hon. Steven L. Hostetler, Judge

Trial Court Cause No.
71D07-1602-MH-100

**Bradford, Judge.**

# Case Summary

M.L. appeals from the trial court's order that his involuntary commitment to Oaklawn OSJ be continued. M.L. contends that Oaklawn has produced insufficient evidence to support a conclusion that he is dangerous to himself or others. Because we disagree, we affirm.

# Facts and Procedural History

M.L. has a lengthy history of hospitalizations for mental illness. Most recently, M.L. was involuntarily committed under a regular commitment on February 29, 2016, following an emergency detention on February 17, 2016. The emergency detention was sought because M.L. was threatening to kill his landlord after M.L. was evicted. The trial court found M.L. to be suffering from a psychiatric disorder, which is a mental illness, and that M.L. was dangerous to others. On March 3, 2016, the trial court amended the order to allow for outpatient treatment at Oaklawn.

On January 27, 2017, the regular commitment was continued without a hearing. On September 20, 2017, Dr. Manana Gegeshidze, M.L.'s treating psychiatrist at Oaklawn since 2016, filed an application for transportation and detention, requesting M.L. be taken to Memorial Epworth Hospital because he was paranoid and delusional, had threatened to harm or kill neighbors, had shoved a neighbor, and had been observed several times carrying a butcher's

knife around his apartment complex. That day, the trial court ordered M.L. transported and admitted to Epworth.

[4] As of February 28, 2018, M.L. had been released back to outpatient treatment at Oaklawn. A report issued on that day indicated that M.L. continued to have paranoid and delusional thoughts towards others and would not comply with treatment unless subject to a commitment. On March 1, 2018, M.L.'s regular commitment was continued on an outpatient basis without a hearing. On March 26, 2018, M.L. requested a review or dismissal of his commitment, and a hearing was held on April 9, 2018.

[5] Dr. Gegeshidze testified at the hearing that M.L. suffers from chronic schizophrenia, auditory hallucinations, and somatic hallucinations, which include his belief that he has chips inserted in his thumbs, is pregnant, has babies, and is being controlled by outside forces. M.L. has experienced at least one catatonic episode. When Dr. Gegeshidze began treating M.L., he had incoherent speech, inappropriate affect and behavior, persecutory delusions, and psychotic behavior. Although his symptoms have improved while he has been in outpatient treatment pursuant to his commitment, he continues to be delusional. M.L.'s delusions include that he is being controlled by the CIA, the mafia, and aliens. M.L. believes that aliens have put a uterus in his stomach to grow alien babies.

[6] M.L. interjected during his counsel's cross-examination of Dr. Gegeshidze to tell the trial court,

> I only know what they tell me, Judge Hostetler. They tell me I'm
> in the mafia, they tell me I'm in the CIA, they tell me I'm a
> single soldier in the 21st century, a combat infantry soldier, and if
> I want to live and survive and live a normal life then I've got to
> go through this treatment. So I go through this treatment with
> the faith and belief in the CIA and the Department of Defense
> and the aliens and the mafia that everything is going to work out
> okay. Whether they will or not, I don't know. I've been doing
> this since I was 18 years old and they did not spoon feed me, they
> dragged me along and they told me what I needed to know at
> each stop. Get me further and further. They literally
> brainwashed me little by little along the way the last 35, 40
> year[s]. I did not come to this information until 2016, and if you
> want to read it, here it is. You should take a look at this right
> here. I did not have this information until 2016–2017, sir.

Tr. Vol. II pp. 28–29. In response to the trial court asking who "they" are,

M.L. said,

> The CIA and the mafia and the aliens who operated on me,
> pulling surgeries. I 15, 16 [sic] disabilities. I lost every function
> or part of my body except my liver and spoon [sic]. Everything
> else is gone. I'm artificial. I'm a dead man walking. My veins,
> my heart, my lungs, my brain. My brain is computerized. My
> feet, my ankle, my hand.

Tr. Vol. II p. 29.

[7] The trial court also heard evidence relating to M.L.'s history of violence, including evidence that it dates back to at least 1994, when he committed an assault resulting in serious injury. In 2001, while admitted to the Federal Medical Center in Rochester, Minnesota, M.L. twice again assaulted people and seriously injured them. On three separate occasions, M.L. has threatened

others with bodily harm. In November, 2017, M.L. was readmitted to the hospital for inpatient care because he threatened his neighbor. Most recently, in March, 2018, M.L. threatened to kill his neighbor, this time talking about obtaining a gun. M.L. told Dr. Gegeshidze that he was a very violent man, he has harmed other people, is going to harm others, and is going to kill others. Dr. Gegeshidze testified that she saw a difference in M.L. at this point because he was talking about getting a gun. Dr. Gegeshidze opined that M.L. is a "very dangerous man" and that commitment was still necessary because of M.L.'s noncompliance with his anti-psychotic medication protocols and his history of violence. Tr. Vol. II p. 16.

[8]     M.L. acknowledged at the hearing that he threatened to kill his neighbor because she "is pushing me to the limit." Tr. Vol. II p. 32. He also testified that he wanted the commitment vacated because he does not think "Oaklawn should have that much power or authority to delegate me to Evansville or Richmond without due process of the law." Tr. Vol. II p. 32. Following the hearing, the trial court ordered that M.L.'s commitment to Oaklawn be continued for a period to exceed ninety days. The trial court found that M.L. suffers from a mental illness pursuant to Indiana Code section 12-7-2-130 and poses a danger to others pursuant to Indiana Code section 12-7-2-53.

# Discussion and Decision

[9]     M.L. contends that Oaklawn produced insufficient evidence to sustain the continuation of his involuntary commitment. The petitioner in a mental health

commitment proceeding must prove by clear and convincing evidence that the person is mentally ill and either dangerous or gravely disabled and that detention or commitment of the person is appropriate. Ind. Code § 12-26-2-5(e). When reviewing the sufficiency of the evidence, we will affirm if, "'considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence.'" *Civil Comm't of T.K. v. Dept. of Veterans Affairs*, 27 N.E.3d 271, 273 (Ind. 2015) (quoting *Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 137 (Ind. 1988)). We look to the evidence most favorable to the trial court's decision and draw all reasonable inferences therefrom. *R.P. v. Optional Behavior MHS*, 26 N.E.3d 1032, 1035 (Ind. Ct. App. 2015).

[10] M.L. does not dispute that he is mentally ill but contends that Oaklawn produced insufficient evidence to sustain the trial court's finding that he poses a danger to others. "Dangerous" is defined by Indiana Code section 12-7-2-53 as "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." The trial court need not wait until a person commits a physical act or actually harms someone before it can determine he poses a substantial risk of harm to others. *See, e.g.*, *Civil Comm't of J.B. v. Cmty Hosp. N.*, 88 N.E.3d 792, 796 (Ind. Ct. App. 2017) (concluding that the trial court is not required to wait until harm has nearly or actually occurred before determining that an individual poses a substantial risk of harm to others).

[11] With this in mind, we conclude that ample evidence supports the trial court's conclusion that M.L. is dangerous. Oaklawn presented evidence that M.L. has a history of violence dating back to at least 1994 that includes physical assaults in 2001 that left two persons with serious injuries. M.L.'s more recent history includes threatening to kill his landlord in 2016 and threatening behavior toward his neighbor which has continued and intensified—M.L. has threatened to kill his neighbor and has spoken of obtaining a firearm to accomplish the homicide. Dr. Gegeshidze opined that M.L. was very dangerous and testified that "in psychiatry the predictor of future violence is history of previous violence and he has a long history of being violent." Tr. Vol. II p. 21. Dr. Gegeshidze also testified that "[if M.L.] quits taking his medications, he would be [a danger to others], and I believe that." Tr. Vol. II p. 21. Finally, Dr. Gegeshidze opined that M.L. is only compliant with his medications because he is committed, further bolstering a conclusion that commitment is needed. In summary, Oaklawn produced sufficient evidence to support a conclusion that M.L. posed a substantial risk of harm to others, warranting his continued commitment. M.L. points to evidence that Dr. Gegeshidze may not have believed that he would actually harm another person and argues that his acts of actual violence against others are not sufficiently serious or recent to establish that he is dangerous. M.L.'s argument is nothing more than an invitation to reweigh the evidence, which we will not do. *See Civil Comm't of T.K.*, 27 N.E.3d at 274.

[12] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.