## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 22 2021, 9:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Deborah Markisohn
Marion County Public Defender Agency
– Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb
Sarah T. Parks
Bose McKinney & Evans, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the
Commitment of E.F.,

E.F.

*Appellant-Respondent,*

v.

Health and Hospital Corporation
d/b/a Sandra Eskenazi Mental
Health Center,

*Appellee-Petitioner.*

January 22, 2021

Court of Appeals Case No.
20A-MH-1103

Appeal from the Marion Superior
Court

The Honorable Kelly M. Scanlan,
Judge Pro Tempore

Trial Court Cause No.
49D08-2005-MH-15959

**Mathias, Judge.**

[1] E.F. appeals the Marion Superior Court's order temporarily committing her to Eskenazi Mental Health Center ("Eskenazi"). E.F. argues that the trial court's finding that she is gravely disabled is not supported by clear and convincing evidence.

[2] Concluding that Eskenazi failed to prove that E.F. is gravely disabled, we reverse.

## Facts and Procedural History

[3] E.F. is a thirty-three-year-old woman who has been diagnosed with schizophrenia and lives with her mother. E.F. has been hospitalized on several occasions over the past five years as a result of her mental illness. Most recently, she was hospitalized from February 26, 2020 to March 9, 2020, and from April 2, 2020 to April 4, 2020. When she was discharged from those hospitalizations, she was prescribed oral medications, which she did not maintain.

[4] On May 13, 2020, law enforcement officers transported E.F. to Eskenazi for an immediate detention following allegations that she was not taking her prescribed medication and had threatened to kill her mother. She also threatened to break the windows in her mother's house. When she was admitted, E.F. "described a delusion that her mother was in some kind of . . . gang bang with the place [she] used to work, and a guy named Bill for ninety billion dollars." Tr. p. 7.

[5] The next day, Eskenazi filed in Marion Superior Court a "Report Following Emergency Detention." Appellant's App. p. 19. Dr. Halimah Oral ("Dr.

Oral"), the treating physician, opined that E.F. suffers from schizophrenia and is gravely disabled. Eskenazi recommended that E.F. be detained in its facility pending a hearing. Dr. Oral believed that E.F. needed custody, care, or treatment in an appropriate facility and stated that E.F. refused to begin voluntary treatment. *Id.* at 24–25. Dr. Oral recommended a temporary commitment not to exceed ninety days.

[6] The trial court held a commitment hearing on May 20, 2020. Eskenazi only presented evidence from Dr. Oral who testified that she had examined E.F. on numerous occasions during the emergency detention. Dr. Oral stated that E.F. suffers from schizophrenia, hallucinations, delusions, and impaired thinking and judgment. Dr. Oral expressed her opinion that E.F. would not take medication as prescribed if she were released from Eskenazi. Dr. Oral was concerned that if E.F. refused to take medications, her delusions would worsen and E.F. might become a danger to herself and/or others. Dr. Oral also testified that during the emergency detention, she has not observed that E.F. was a danger to herself or others, only that she possibly could be. Tr. pp. 9, 13.

[7] E.F. testified and, on multiple occasions, denied suffering from schizophrenia. Tr. pp. 15, 20. Yet, she stated she would take her prescribed medications. While she did not deny prior hospitalizations, she did not agree that she was hospitalized as a result of her mental illness. E.F. was able to care for her basic needs during the emergency detention. And, Eskenazi did not present any evidence that she acted dangerously or aggressively toward hospital staff.

[8]     The trial court found that E.F. suffers from schizophrenia. The court also found that E.F.

> is currently gravely disabled in that she is demonstrating a
> substantial impairment and obvious deterioration in her
> judgment and reasoning and behavior that has resulted in her
> inability to function independently at this point in time. The
> court basis [sic] that on all of the testimony including Dr. Oral's
> testimony - that of the delusions that [E.F.] reported and as well
> as her significant disorganized thought processes. . . . [H]er
> thoughts are not logical and goal directed, per Dr. Oral and her
> reasoning is significantly impaired which prevents her from
> reaching logical conclusions about what is going on around or
> what she should do which would certainly put her at risk for
> harm in the community. Furthermore, [E.F.] has . . .
> demonstrated no insight into her mental illness. She denies . . .
> having schizophrenia and it sounds as though . . . that she is not
> in agreement with taking medications once she is released from
> the hospital. . . . I will point out that the court is as well
> concerned with the multiple admissions since the end of
> February so [E.F.] has established a pattern of not following
> through with what has been prescribed and return to the hospital
> and she is a high risk of returning again if not on commitment.

Tr. pp. 21–22. For these reasons, the trial court granted Eskenazi's request to temporarily commit E.F. until August 18, 2020, unless discharged prior to that date.

[9]     E.F. now appeals. Additional facts are provided below.

# Discussion and Decision

[10] E.F. contends that there was insufficient evidence to support her involuntary regular commitment because Eskenazi did not prove by clear and convincing evidence that she is gravely disabled. First, we observe that E.F.'s appeal is arguably moot because ninety days have elapsed since the trial court issued its order and she has likely been released from her involuntary commitment. "When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed." *In re Commitment of J.M.*, 62 N.E.3d 1208, 1210 (Ind. Ct. App. 2016) (quoting *In re J.B.*, 766 N.E.2d 795, 798 (Ind. Ct. App. 2002)). However, "Indiana recognizes a public interest exception to the mootness doctrine, which may be invoked when the issue involves a question of great public importance which is likely to recur." *T.W. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 121 N.E.3d 1039, 1042 (Ind. 2019) (quoting *Matter of Tina T.*, 579 N.E.2d 48, 54 (Ind. 1991)). "[A]n involuntary commitment is of great public interest and involves issues which are likely to recur, so we generally choose to address the merits of such appeals, despite the mootness of the case." *B.D. v. Ind. Univ. Health Bloomington Hosp.*, 121 N.E.3d 1044, 1048 (Ind. Ct. App. 2019).

[11] "'[T]he purpose of civil commitment proceedings is dual: to protect the public and to ensure the rights of the person whose liberty is at stake.'" *T.K. v. Dep't of Veterans Affs.*, 27 N.E.3d 271, 273 (Ind. 2015) (quoting *In re Commitment of Roberts*, 723 N.E.2d 474, 476 (Ind. Ct. App. 2000)). "The liberty interest at stake in a civil commitment proceeding goes beyond a loss of one's physical freedom,

and given the serious stigma and adverse social consequences that accompany such physical confinement, a proceeding for an involuntary civil commitment is subject to due process requirements." *Id*.

[12] To satisfy due process, the facts justifying an involuntary commitment must be proved by clear and convincing evidence. *In re Commitment of G.M.*, 743 N.E.2d 1148, 1151 (Ind. Ct. App. 2001). Clear and convincing evidence is defined as an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt. *T.D. v. Eskenazi Midtown Cmty. Mental Health Ctr.*, 40 N.E.3d 507, 510 (Ind. Ct. App. 2015). In order to be clear and convincing, the existence of a fact must be highly probable. *Id*. When we review the sufficiency of the evidence supporting an involuntary commitment, we will affirm if, "considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence." *T.K.*, 27 N.E.3d at 273 (citation omitted).

[13] To obtain an involuntary commitment, the petitioner is "required to prove by clear and convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind. Code § 12-26-2-5(e). Here, the trial court found that E.F. is mentally ill and gravely disabled. E.F. does not dispute that she is mentally ill. Her sole challenge to the sufficiency of the evidence revolves around the trial court's finding that she is gravely disabled.

Gravely disabled is defined as:

> a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>
> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind. Code § 12-7-2-96. Because this definition is written in the disjunctive, it is not necessary to prove both prongs to establish grave disability. *W.S. v. Eskenazi Health, Midtown Cmty. Mental Health*, 23 N.E.3d 29, 34 (Ind. Ct. App. 2014), *trans. denied*. In this case, the trial court concluded that E.F. was gravely disabled as defined by Section 12-7-2-96(2).

E.F. lives with her mother. She has physically harmed her mother in the past. On May 13, 2020, the date E.F. was admitted to Eskenazi, she threatened to kill her mother and destroy the windows of their home. E.F.'s medical records from past hospitalizations document E.F.'s delusions that her mother is trying to harm her. Tr. p. 7. But Eskenazi did not present any evidence that E.F. made additional threats towards her Mother during her emergency detention in this case. And, very importantly, Eskenazi never alleged that she was a danger to herself or others.

Dr. Oral reviewed E.F.'s medical records and treated her when she was admitted to Eskenazi. Dr. Oral testified that E.F's "symptoms have been

present for well over six months[.]" *Id*. E.F. suffers from delusions, hallucinations and "significant thought disorganization." *Id*. Dr. Oral personally observed E.F. suffering from hallucinations and disorganized thoughts. E.F. was previously hospitalized with similar symptoms from February 26 to March 9, 2020 and from April 2 to April 4, 2020. E.F. also has a history of several temporary commitments within the last five years. Dr. Oral's testimony focused on E.F.'s prior commitments and medical records. While relevant, E.F.'s prior medical history and past treatment of her mental illness is not clear and convincing evidence that would support the conclusion that E.F. was gravely disabled on the date of the commitment hearing.

[17] Eskenazi proved that E.F. lacks insight into her mental illness. E.F. struggles to understand the importance of taking her medications as prescribed. Tr. p. 11. E.F. describes pills as "yucky," and she has stated that she will give her medication to someone who needs it. *Id*. E.F. also does not believe that she suffers from schizophrenia. Tr. pp. 11, 15, 20. She also denied suffering from delusions. Tr. p. 17. E.F. was hospitalized as a result of her mental illness on three separate occasions in less than three months in 2020. Dr. Oral does not believe that E.F. will continue to take prescribed medication if she is discharged and she would likely be re-hospitalized "very soon." Tr. p. 11.

[18] However, E.F. correctly observes that her refusal to acknowledge her mental illness or to take recommended medication "standing alone, are insufficient to establish grave disability because they do not establish, by clear and convincing

evidence, that such behavior 'results in the individual's inability to function independently.'"[1] *T.K.*, 27 N.E.3d at 276 (quoting I.C. § 12-7-2-96(2)).

[19]    After examining E.F. and considering her medical history, Dr. Oral concluded that E.F. "has decompensated due to noncompliance with medication." Tr. p. 9. Dr. Oral opined that if E.F. continues to refuse medication, "her delusions will worsen" and she will "have conflicts with the people that she is living with and possibly other individuals as well." *Id*. Ultimately, Dr. Oral concluded that E.F. is gravely disabled because

> [S]he has severe thought disorganization that prevents her from being based in reality and knowing what needs to be done or . . . having a real picture of what is going on around her. And I think that the delusions also contribute to that. Yesterday when I spoke to her, she was still jumping from topic to topic. . . . [H]er thoughts were not logical or goal directed. . . . [E.F.'s] reasoning is significantly impaired because she is not able to sort of follow it out through to its conclusion and she is also bothered by these delusions that prevent her from having a real picture of what is

---

[1] In *T.K.*, our supreme court disapproved of cases from this court applying a too-deferential standard of review, which affirmed civil commitment orders merely if a reasonable person could have drawn the conclusion that commitment was necessary, even if other reasonable conclusions were possible. 27 N.E.3d at 274 (disapproving *M.L. v. Meridian Servs., Inc.*, 956 N.E.2d 752 (Ind. Ct. App. 2011); *S.T. v. Cmty. Hosp. N.*, 930 N.E.2d 684 (Ind. Ct. App. 2010); *K.F. v. St. Vincent Hosp. & Health Care Ctr.*, 909 N.E.2d 1063 (Ind. Ct. App. 2009); *J.S. v. Ctr. for Behavioral Health,* 846 N.E.2d 1106 (Ind. Ct. App. 2006*), trans. denied*). The *T.K.* Court did not list every case from this court that contained the disapproved language.

Cases *T.K.* did not include, but which contain the disapproved standard of review, are *A.L. v. Wishard Health Services*, 934 N.E.2d 755 (Ind. Ct. App. 2010), *trans. denied,* and *In re Involuntary Commitment of A.M.*, 959 N.E.2d 832, 835 (Ind. Ct. App. 2011). Eskenazi relies heavily on these cases in arguing that E.F.'s commitment was supported by sufficient evidence. However, *both cases were* decided before *T.K.* disapproved of the standard of review employed in *A.L.* and *A.M.*; therefore, Eskenazi's citations to *A.L.* and *A.M.* do not persuasively support its argument. If an appellate case applied an incorrect and too-deferential standard of review, it is difficult if not impossible to assess whether that case's ultimate determination of the sufficiency of the evidence is still valid. Both *A.L.* and *A.M.* were implicitly, if not expressly, disapproved of by *T.K.*

going on. And because of that she cannot reach logical conclusions about what is going on around her or what she needs to do. So I think that constitutes an impairment in her reasoning.

Tr. pp. 10–11. Dr. Oral believed that E.F. was capable of performing activities of daily living, i.e. showering and eating. But the doctor was concerned that E.F.'s mental illness could cause her harm because she was likely to become distracted by her delusions, which presents safety concerns. Dr. Oral was also concerned that E.F. was likely to be involved in conflicts with strangers.

[20] But E.F.'s hypothetical mental state in the future cannot support a finding of grave disability. *See In the Matter of the Civil Commitment of B.J.*, 67 N.E.3d 1034, 1040 (Ind. Ct. App. 2016) (noting that Indiana Code section 12-7-2-96 requires the trier of fact to assess the individual's state at the time of the hearing prior to ordering a commitment). In *T.K.*, our supreme court concluded that threats to other individuals combined with a failure to medicate and denial of mental illness is not clear and convincing evidence that an individual is gravely disabled. 27 N.E.3d at 277.

[21] In *B.J.*, the treating physician believed that B.J. was gravely disabled because his delusions made B.J. believe that he was being watched, causing him to anger easily. 67 N.E.3d at 1037. The doctor also believed that if B.J. did not continue with his treatment plan there was a risk that he would harm himself or others because his symptoms would escalate. *Id*. Like E.F., B.J. lived with his parents and relied on them for support, and he was able to meet his basic human needs. *Id*. The trial court concluded that B.J. was gravely disabled

because he both lacked insight into his mental illness and behavior and suffered from delusions. Our court reversed the commitment order after concluding that the evidence only supported the conclusion that B.J. *might* become a danger to himself or others in the future. *Id*. at 1040.

> The only other evidence supporting B.J.'s commitment was Dr. Salama's testimony and reports that B.J. had threatened other individuals, Dr. Salama's testimony that B.J. had missed two treatment appointments, and B.J.'s behavior that led the trial court to determine that he was in denial of his mental illness. However, the supreme court held in *T.K.* that threats such as those made by T.K. and B.J., failure to medicate, and a denial of mental illness are not sufficient to prove that an individual is gravely disabled. Accordingly, we must conclude that there also was insufficient evidence here for the trial court to conclude that B.J. was gravely disabled. We are not holding that evidence of threats may never be sufficient evidence of a grave disability, but there was no evidence that B.J. destroyed property or put himself or others in actual danger after he began his treatment. Those were two factors that the *T.K.* Court found significant in determining whether T.K. was gravely disabled. *See T.K.*, 27 N.E.3d at 277.

*Id*.

[22] Our court addressed similar circumstances in *P.B. v. Evansville State Hospital*, 90 N.E.3d 1199 (Ind. Ct. App. 2017). In that case, P.B. was hospitalized because she suffered from paranoid delusions and believed that individuals were breaking into her apartment and threatening her harm. *Id.* at 1200–01. She had frequent conflicts with neighbors and called the police department multiple times per day. *Id.* She was not compliant with therapy or recommended

medication. *Id.* at 1201. While hospitalized, P.B. engaged in unpleasant and aggressive behavior and was resistant to being medicated. *Id*. at 1204. However, there was no evidence that P.B.'s delusions caused her to destroy property or cause harm to herself or any other person. *Id.* And there was no evidence that she was unable to feed, shelter, or cloth herself. *Id.* We concluded that the hospital did not present clear and convincing evidence of grave disability after observing that

> Dr. Vatel's recommendation in favor of P.B.'s continued involuntary commitment was based on her unpleasantness and inability to get along with other people, her paranoid delusions, and her failure to fully cooperate with treatment. None of this is untrue, and there is no doubt that P.B. suffers from severe mental illness. However, the statutory definition of "gravely disabled" is very specific, and it has not been met here. There is a lack of clear and convincing evidence that P.B. was unable to function independently or that she was in danger of not providing for her own needs.

*Id.* at 1204–05.

[23]     Here, Dr. Oral testified that E.F. was able to take care of her basic needs. Eskenazi did not present any evidence that E.F. would be unable to return to her mother's home when released from her hospitalization. E.F.'s testimony that she has a job was not disputed. Dr. Oral testified that E.F. suffered from hallucinations and delusions while hospitalized, but there was no evidence that E.F. threatened harm to herself or others or engaged in any harmful behavior to

any person or property during her hospitalization.[2] E.F. did not refuse medication while hospitalized. Tr. p. 14. Dr. Oral's concerns that E.F. would likely suffer harm if she does not continue to take her medication were speculative. And although Dr. Oral believed that E.F. suffers from impairment in her reasoning, she did not testify how that impairment rendered E.F. unable to function independently on the date of the commitment hearing. Tr. p. 10. Importantly, Dr. Oral testified she had not observed that E.F. was a danger to herself or others, only that she possibly could be. Tr. pp. 9, 13.

[24] Eskenazi proved that E.F. suffers from schizophrenia affecting her ability to function independently. But Eskenazi was required to prove by clear and convincing evidence that E.F. was gravely disabled, i.e. in danger of coming to harm because she is *unable* to function independently. *See* I.C. § 12-7-2-96(2). Dr. Oral's testimony is this case was simply too vague and speculative to support the trial court's finding of grave disability. For these reasons, we conclude that the trial court's temporary commitment order was not supported by clear and convincing evidence.

---

[2] Dr. Oral testified that E.F. had physical altercations with her mother that led to prior hospitalizations. The incident that led to E.F.'s emergency detention in this case was an oral threat to kill her mother and destroy the windows of their home. E.F.'s mother dealt with the threats appropriately and called the police, who transported E.F. to Eskenazi. There is no evidence in the record that E.F. made any additional threats during her hospitalization.

# Conclusion

Eskenazi failed to establish, by clear and convincing evidence, that E.F. was gravely disabled, as defined by statute. Thus, the trial court's order for E.F.'s involuntary commitment was not supported by sufficient evidence and must be reversed.

Reversed.

Altice, J., and Weissmann, J., concur.