## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 20 2016, 6:22 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Darren Bedwell
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Anna Kirkman
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

In The Matter of the Civil Commitment of S.J.,

*Appellant,*

v.

Eskenazi Health,

*Appellee.*

January 20, 2016

Court of Appeals Cause No.
49A02-1505-MH-390

Appeal from the Marion Superior Court

The Honorable Steven Eichholtz, Judge

Trial Court Cause No.
49D08-0905-MH-21678

**Barnes, Judge.**

# Case Summary

S.J. appeals her involuntary civil commitment. We affirm.

# Issue

S.J. raises one issue, which we restate as whether there is sufficient evidence to support the trial court's determination that she is gravely disabled.

# Facts

In 2009 and 2010, S.J. was hospitalized because of mental health issues. In January 2015, S.J.'s family sought an emergency detention after S.J. disappeared for three months and returned acting as if nothing had happened. S.J. was wearing the same clothes she was wearing when she left. S.J. received inpatient care but was resistant to treatment. She was then placed in temporary respite care to create a discharge plan. Because of concerns about S.J.'s ability to care for herself, a petition requesting an extension of S.J.'s commitment was filed. Following a hearing, the trial court concluded that S.J. was gravely disabled and extended S.J.'s commitment. S.J. now appeals.

# Analysis

S.J. argues there is insufficient evidence that she is gravely disabled.[1] "The liberty interest at stake in a civil commitment proceeding goes beyond a loss of

---

[1] Although S.J. mentions a patient's right to judicial review of a proposed treatment plan, we consider this to be part of her overall challenge to the sufficiency of the evidence and not a separate issue.

one's physical freedom, and given the serious stigma and adverse social consequences that accompany such physical confinement, a proceeding for an involuntary civil commitment is subject to due process requirements." *Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273 (Ind. 2015). To satisfy the requirements of due process, the facts justifying an involuntary commitment must be shown by clear and convincing evidence that not only communicates the relative importance our legal system attaches to such a decision, but also has the function of reducing the chance of inappropriate commitments. *Id.*

[5] Pursuant to Indiana Code Section 12-26-2-5(e), a petitioner is required to prove by clear and convincing evidence that "(1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." "Gravely disabled" is defined as:

> a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>
> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind. Code § 12-7-2-96. In reviewing the sufficiency of the evidence, we will affirm if, considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a

reasonable trier of fact could find the necessary elements were proven by clear and convincing evidence. *T.K.*, 27 N.E.3D at 273.

[6]    S.J. claims that, although she does not behave as her family and doctors would like her to, there is scant evidence that she is unable to provide for her own needs or function independently. To the contrary, the evidence shows that S.J. suffers from schizophrenia and is "extremely paranoid." Tr. p. 10. When she arrived at the hospital, S.J. was "slightly malnourished, disheveled, with poor hygiene, very confused and disorganized." *Id.* at 9. While hospitalized, S.J. refused to let medical students interview her, rarely let her doctor into her room, and only ate packaged food. Her doctor testified that there is no depth or substance to S.J.'s conversations, with S.J. repeatedly stating she is "perfectly fine" and "doesn't need medication." *Id.* at 11. S.J. "believes that she has nothing wrong with her and does not need any assistance finding housing, getting an income, receiving treatment. She wants to do everything on her own and we just believe that at this time she's too sick to do that." *Id.*

[7]    As examples of S.J.'s behavior, the doctor stated that S.J. spent hours on the phone trying to buy a plane ticket to Mexico and trying to obtain a bank loan by posing as a hospital employee. S.J. refused offers to help pay for medication and waited five or six weeks to agree to receive Medicaid assistance. The doctor explained that S.J. will not change her clothes and suggested that S.J. had gone a year without changing her clothes. S.J. also refused to allow a medical exam despite her doctor's concerns about S.J.'s leg, which had a sore and appeared swollen. According to her doctor, when asked how she will

provide for herself, S.J. says she will "sell stuff" but offers no "solid information to help . . . her own discharge plan." *Id.* at 14. S.J. is also reluctant to take medication to treat her mental illness and has been off of her medication for five years. Her doctor testified that S.J. will not voluntarily take medication. S.J.'s doctor testified that S.J. is "[a]bsolutely" gravely disabled. *Id.* at 13. She also testified that S.J.'s reasoning and judgment are so impaired that she is "[a]bsolutely" at risk of harm. *Id.* at 15.

[8] This is consistent with S.J.'s testimony that she disagrees with the schizophrenia diagnosis and does not feel like she needs medication. S.J. testified that she could get money by selling her things, connecting with her church, and asking her cousin. S.J. did not specify where she had been living prior to her hospitalization in January but suggested she was spending time in libraries and train stations. Regarding her three-month absence from Indianapolis, S.J. described traveling to Flint, Michigan, via bus and train, packing only a few items, and not washing her clothes during that time.

[9] This evidence, including her own testimony, shows that S.J. is unwilling to accept that she suffers from schizophrenia and to treat her disease. She is also unwilling to take help when it is offered to her. Further, S.J. does not have financial resources to support herself and could not offer a clear plan for obtaining housing and continuing treatment upon her release from the hospital. This is clear and convincing evidence that, as a result of her mental illness, there is a danger of harm coming to S.J. because she is unable to provide food, clothing, shelter, and other essential needs and because of an obvious

deterioration of her judgment and reasoning. There is sufficient evidence to support the civil commitment.

## Conclusion

There is clear and convincing evidence that S.J. is gravely disabled. We affirm.

Affirmed.

Robb, J., and Altice, J., concur.