## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 05 2016, 8:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jessica Barth
VP of Legal Affairs & Chief
Counsel for Eskenazi Health
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Civil Commitment of<br><br>L.V.,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Eskenazi Health,<br><br>*Appellee-Petitioner.* | July 5, 2016<br><br>Court of Appeals Case No. 49A02-1512-MH-2186<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Steven R. Eichholtz, Judge<br><br>Probate Court Cause No. 49D08-1511-MH-37782 |

**Bradford, Judge.**

## Case Summary

In November of 2015, Appellant-Respondent L.V. was taken by police to Appellee-Petitioner Eskenazi Health's Crisis Intervention Unit. L.V. exhibited signs of paranoid delusions and was diagnosed as schizophrenic by a resident physician at Eskenazi. Eskenazi petitioned for the temporary involuntary commitment of L.V. in order to provide treatment. After a hearing, the probate court ordered that L.V. be committed to Eskenazi for a period of not more than ninety days. L.V. appeals her involuntary commitment arguing that there was insufficient evidence that she was "gravely disabled" due to her mental illness. Concluding otherwise, we affirm.

## Facts and Procedural History

On November 7, 2015, fifty-seven-year-old L.V. arrived at Eskenazi by ambulance and was seen by Eskenazi's Crisis Intervention Unit. (Tr. 10) According to Doctor Kevin Masterson, a resident physician at Eskenazi, L.V. exhibited signs of paranoid delusions upon arrival. "She's talked about marital fraud, hacker fraud, financial fraud, medical fraud, prescription fraud, etc." Tr. pp. 11-12. L.V. reported that she was "being attacked and hacked by people from Africa due to something she called 'The Bribe.'" Tr. p. 11. L.V. said that she had been hospitalized on six prior occasions and diagnosed with schizophrenia, but that the diagnoses and medications she has been given as treatment were all part of a conspiratorial medical fraud perpetrated against her. (Tr. 14) L.V. reported that she is actually a multi-millionaire but eighty-three persons have each stolen one million dollars from her. (Tr. 12)

[3] L.V. reported that she stayed in Las Vegas in January 2015, Chicago in October 2015, and had been in Indianapolis since the beginning of November. (id) However, when asked to provide more detail, L.V. could not give specific information "on exactly how she has been traveling or if she has any source of income" and she generally reverts back to talking about "this sort of delusion of [] people being after her." Tr. pp. 12-13. To the best of the treatment team's knowledge, L.V. had no place to live and no source of income. (Tr 18) Dr. Masterson diagnosed L.V. with schizophrenia based on her paranoid delusions and her disorganized and illogical speech patterns which cause her to be "very tangential whenever you ask her any questions, and everything sort of just again goes back to [the] delusion." Tr. p. 15. Dr. Masterson also found that L.V. "has no insight into her condition," appellant's app. p. 15., and is "gravely disabled as a result of her mental illness." Tr. p. 17.

[4] On November 9, 2015, Eskenazi submitted an application for emergency detention of a mentally ill person. The following day, L.V. was admitted to the inpatient psychiatric unit at Sidney and Lois Eskenazi Hospital. On November 12, Eskenazi filed a report with the probate court summarizing Dr. Masterson's diagnosis and recommending that L.V. be temporarily committed. (app 13-17) On November 17, the probate court held a hearing concerning L.V.'s involuntary commitment at which L.V. testified. (App 18) The probate court subsequently issued an order that L.V. be committed for treatment for a period not exceeding ninety days. (app. 9)

# Discussion and Decision

## I. Mootness

L.V. concedes that she has already been discharged from her ninety-day involuntary commitment and so this case is moot. "When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed." *In re Commitment of T.K.*, 993 N.E.2d 245, 248 (Ind. Ct. App. 2013) (quoting *In re Commitment of J.B.*, 766 N.E.2d 795, 798 (Ind. Ct. App. 2002)). However, Indiana courts have typically addressed involuntary commitment cases on the merits despite their mootness because such cases involve questions of "great public interest" and are likely to recur. *Id.*; *see also Commitment of M.M. v. Clarian Health Partners*, 826 N.E.2d 90, 94 (Ind. Ct. App. 2005). We see no reason to deviate from this practice and therefore choose to address the merits of the instant matter.

## II. Sufficiency of the Evidence

L.V. argues that Eskenazi failed to present sufficient evidence that she was "gravely disabled" as was necessary to justify her involuntary commitment. "To satisfy the requirements of due process, the facts justifying an involuntary commitment must be shown by clear and convincing evidence which not only communicates the relative importance our legal system attaches to a decision ordering an involuntary commitment, but also has the function of reducing the chance of inappropriate commitments." *Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273 (Ind. 2015) (quotation omitted). In

reviewing the sufficiency of the evidence for a civil commitment, we will affirm if "considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find the necessary elements proven by clear and convincing evidence." *Id.* (quotation omitted).

[7] "To demonstrate that a person should be committed involuntarily, a petitioner must show 'by clear and convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate.'" *T.A. v. Wishard Health Serv., Midtown Cmty. Mental Health Ctr.*, 950 N.E.2d 1266, 1270 (Ind. Ct. App. 2011) (citing Ind. Code § 12-26-2-5(e)). Eskenazi does not argue that L.V. is dangerous, only that she is gravely disabled. L.V. does not dispute that she suffers from a mental illness and contests only whether there is sufficient evidence that she is gravely disabled. Indiana Code section 12-7-2-96 defines "gravely disabled" as

> a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Because Section 12-7-2-96 is written in the disjunctive, clear and convincing evidence of either prong is sufficient to establish that L.V. is gravely disabled.

Nonetheless, we find that there is sufficient evidence that L.V. is gravely disabled under both prongs.

## A. Inability to Provide for Self

[8] To the best of the treatment team's knowledge, L.V. had no source of income and was "homeless and [] transient," at the time of her commitment. Tr. p. 17. L.V. was unable to answer basic questions regarding where she had been staying or how she had, according to her, been travelling across the country for twenty months. (tr 45-46) L.V.'s testimony at the hearing reinforces the notion that her mental illness has significantly impaired her ability to care for herself. L.V. testified that upon her arrival in Indianapolis, she attempted to use her Fidelity Investment card at the Crowne Plaza Hotel, but "being the victim of identity theft, [the card] was swiped," and she was ultimately escorted out by police. (Tr. 37) L.V. told police that she did not know where she would go and so police took her to a women's shelter where she stayed for a couple of weeks. (Tr. 38) L.V. testified that she was "harassed" by other women at the shelter and, ultimately, police removed her from the women's shelter and told her if she returned she would be arrested. Tr. p. 38. At some point thereafter, L.V. went to a local Sam's Club to speak to the manager about her Sam's Club "merchant account" in an attempt to withdraw money. Tr. p. 41. The police were called and brought L.V. to Eskenazi for treatment.

[9] The probative evidence indicates that L.V. is schizophrenic and suffers from pervasive paranoid delusions. This illness has certainly hindered L.V.'s ability to maintain shelter for herself as is evidenced by her staying at a women's

shelter. Additionally, L.V. could provide no information on a source of income aside from apparent delusions about various "hacked" accounts and stolen money. Tr. p. 38. The probate court found that "listening to [L.V.]…she really hasn't answered any question. There's no indication that anyone knows where she lives, how she supports herself." Tr. p. 53.

## B. Substantial Impairment of Judgment, Reasoning, or Behavior

[10] Dr. Masterson opined that L.V. "is in danger of coming to harm because she has a substantial impairment or obvious deterioration in judgment, reasoning and behavior that impairs her ability to function in [the] world," and that she is unable to function on her own. Tr. pp. 18, 19. In support of this claim, Dr. Masterson testified that L.V.'s speech and thoughts are disorganized to such a degree that she is "unable to [] engage in basic communication" or even answer simple questions about herself. Tr. p. 17. L.V. testified that, prior to arriving at Eskenazi, she had been in Indianapolis for a few weeks. In that short time, L.V.'s inability to communicate and apparent deterioration of reasoning led to several incidents in which police were called and had to remove L.V. from the premises. It seems clear from L.V.'s testimony alone that her delusions have caused substantial impairment to her reasoning and judgment, an impairment which has caused an inability to function inability. Accordingly, we find that there was sufficient evidence to support the probate court's determination that L.V. was gravely disabled.

[11] The judgment of the probate court is affirmed.

Bailey, J., and Altice, J., concur.