

FILED

Aug 23 2018, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Isabella H. Bravo
Bloomington, Indiana

ATTORNEY FOR APPELLEE

James L. Whitlatch
Bunger & Robertson
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: The Commitment of D.S.; <br> D.S. <br> *Appellant/Respondent,* <br><br> v. <br><br> Indiana University Health Bloomington Hospital <br> *Appellee/Plaintiff.* | August 23, 2018 <br><br> Court of Appeals Case No. 18A-MH-590 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Stephen R. Galvin, Judge <br><br> Trial Court Cause No. 53C07-1801-MH-36 |

**Pyle, Judge.**

## Statement of the Case

[1] D.S. ("D.S.") appeals the trial court's order granting the petition filed by Indiana University Health Bloomington Health ("the Hospital") for her regular commitment. She argues that: (1) there was not sufficient evidence to prove

that she was "gravely disabled;" (2) that the trial court's forced medication order was not the least restrictive treatment; and (3) that the testimony of psychiatrist Carey Mayer, M.D. ("Dr. Mayer") contained inadmissible hearsay. Because we conclude that there was not sufficient evidence to prove that D.S. was "gravely disabled," we reverse the trial court's decision and remand for the trial court to vacate the order of regular commitment. [1]

We reverse and remand.

## Issue

Whether there was sufficient evidence to support the trial court's regular commitment of D.S.

## Facts

On January 27, 2018, Officer Kyle Thomas ("Officer Thomas") of the Bloomington Police Department ("BPD") responded to a 911 call regarding an incident (the "Incident") in downtown Bloomington, Indiana. When Officer Thomas responded to the call, he saw D.S. waving a sign out of a vehicle while screaming. He attempted to stop D.S.'s vehicle, but she continued driving until traffic blocked her vehicle. Believing D.S. to be suffering from psychosis, Officer Thomas forcibly removed D.S. from her vehicle and brought her to the Hospital for an emergency detention.

---

[1] Because we reverse, we need not address whether the trial court's forced medication order was the least restrictive treatment or whether Dr. Mayer's testimony contained inadmissible hearsay.

[4]     At the Hospital, physician Daniel J. Garrison, M.D. ("Dr. Garrison") filed an Application for Emergency Detention ("Application") stating that D.S. appeared to have "acute or chronic psychosis, patient is manic and lead [sic] BPD in a chase in her car throughout downtown Bloomington." (App. Vol. 2 at 5). Dr. Garrison further alleged in the Application that D.S.'s decision-making was impaired, placing her in a potentially harmful situation, and he recommended that D.S. be admitted to the Hospital's Crisis Care Unit. The next day, the trial court approved the seventy-two (72) hour emergency detention of D.S., and D.S. was held at the Hospital.

[5]     Three days later, on January 31, 2018, Hospital Social Worker James D. Baugh ("Baugh") completed a Report Following Emergency Detention ("Report") and filed in the trial court a Petition for Involuntary Commitment ("Petition") seeking regular commitment of D.S. for a period of one (1) year. In the Petition, Baugh alleged that D.S. was suffering from a psychotic disorder and "present[ed] as gravely impaired with helix of schizophrenia, bipolar, schizoaffective, and bipolar type." (App. Vol. 2 at 12). The Petition further alleged that D.S. was unable to care for herself, meet her basic needs, or identify appropriate shelter and that she had no family, friends, or others willing to assist her in meeting those needs. Psychiatrist Carey Mayer, M.D. ("Dr. Mayer") simultaneously filed a physician's statement alleging that D.S. was suffering from a psychiatric disorder and was "delusional, causing disturbance(s) involving the police." (App. Vol. 2 at 15).

[6]     A week later, on February 6, 2018, the trial court held its hearing on the Hospital's Petition for the regular commitment of D.S. Two witnesses, Dr. Mayer and D.S. testified. First, Dr. Mayer testified about the circumstances under which D.S. was brought to the Hospital. At the outset of his testimony, he read into the record an assessment done by one of the Hospital's therapists when D.S. was admitted. Counsel for D.S. objected to the testimony on the basis that it was hearsay, and the trial court overruled the objection.

[7]     Next, Dr. Mayer testified to his "own direct observations" of D.S. (Tr. 4). Dr. Mayer testified that he assessed D.S. to be "suffering from a schizoaffective disorder, bipolar type" and that she need[ed] medications "which unfortunately she refuse[d] to consider." (Tr. 5). He also testified that "for the last seven [or] eight days" D.S. had remained "psychotic" and "preoccupied" and that he therefore believes "she is gravely impaired and unable to provide for her own safety, shelter, food, clothing, [and] needs." (Tr. 5). Dr. Mayer also recommended a forced medication order of three drugs: Zyprexa, Abilify, and the injectable drug Invega. (Tr. 5). During cross-examination, Dr. Mayer agreed that D.S. was neither malnourished nor dehydrated when admitted to the Hospital, that she had a residence where she could stay upon release from the Hospital, and that she had secured these "shelter, food, and clothing without hospital assistance" and without taking "any type of medication." (Tr. 12).

[8]     Finally, D.S. testified about her life outside of the Hospital. She stated that she had been living with a friend in Jackson County since approximately July 2016

and that she had been employed at an appliance production company in Bedford, Indiana from August 2016 until January 2018. She also stated that she maintained relationships with her parents and daughter who lived in Indiana and her two brothers who lived in other states. She testified that she had checking and savings accounts from which she paid weekly rent to her friend, a monthly car payment, and car insurance. She further testified that until her current hospitalization she had not been hospitalized since 2016. She indicated that she was unwilling to take Invega because of negative side effects, but that she would be willing to try an alternative.

[9]     At the conclusion of the hearing, the trial court granted the Hospital's Petition for D.S.'s regular commitment, finding that D.S. was gravely disabled and in need of commitment for a period expected to exceed ninety (90) days. The trial court also granted the forced medication order, permitting the Hospital to treat D.S. with Invega, Abilify, and Zyprexa. D.S. now appeals.

# Decision

[10] On appeal, D.S. argues that the trial court erred in ordering her regular commitment[2] because there was insufficient evidence to prove that she was "gravely disabled" as required by statute. *See* IND. CODE § 12-7-2-96. In reviewing the sufficiency of the evidence to support a civil commitment, which requires clear and convincing evidence, "'an appellate court will affirm if, considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find the [necessary elements] proven by clear and convincing evidence.'" *Commitment of M.E. v. Dep't of Veteran's Affairs*, 64 N.E.3d 855, 861 (Ind. Ct. App. 2016) (quoting *Civil Commitment of T.K. v. Dep't of Veteran's Affairs*, 27 N.E.3d 271, 273 (Ind. 2015) (internal quotation omitted)).

[11] INDIANA CODE § 12-26-2-5(e) provides that the petitioner in a case involving the involuntary commitment of mentally ill individuals must prove by clear and convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is

---

[2] In *Civil Commitment of T.K. v. Dep't of Veterans Affairs,* 27 N.E.3d 271, 273 n. 1 (Ind. 2015), our supreme court explained:

> In Indiana, an adult person may be civilly committed either voluntarily or involuntarily. Involuntary civil commitment may occur under four circumstances if certain statutorily regulated conditions are satisfied: (1) "Immediate Detention" by law enforcement for up to 24 hours; (2) "Emergency Detention" for up to 72 hours; (3) "Temporary Commitment" for up to 90 days; and (4) "Regular Commitment" for an indefinite period of time that may exceed 90 days.

(internal citations omitted).

appropriate. Clear and convincing evidence requires proof that the existence of a fact is "highly probable." *M.E.*, 64 N.E.3d at 861. "'There is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom.'" *Id.* (quoting *Commitment of J.B. v. Midtown Mental Health Ctr.*, 581 N.E.2d 448, 451 (Ind. Ct. App. 1991)).

[12] D.S. does not dispute the trial court's finding that she is mentally ill. However, she argues that there was insufficient evidence to support the trial court's finding that she is gravely disabled. INDIANA CODE § 12-7-2-96 defines "gravely disabled" as:

> A condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> > (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
> >
> > (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Because this statute is written in the disjunctive, a trial court's finding of grave disability survives if we find that there was sufficient evidence to prove either that the individual was unable to provide for his basic needs or that his judgment, reasoning, or behavior was so impaired or deteriorated that it resulted in his inability to function independently. *Commitment of B.J. v. Eskenazi Hosp./Midtown CMHC*, 67 N.E.3d 1034, 1039 (Ind. Ct. App. 2016). Our supreme court has previously held that a denial of mental illness and

refusal to medicate, standing alone, are insufficient to establish grave disability because they do not establish by clear and convincing evidence that the individual is unable to function independently. *See T.K.*, 27 N.E.3d at 276. The United States Supreme Court has also held that, since everyone exhibits some abnormal conduct at one time or another, "loss of liberty [through a commitment] calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior." *Addington v. Texas*, 441 U.S. 418, 426-27, 99 S.Ct. 1804, 1810 (1979).

[13] D.S. argues that there was insufficient evidence that she was gravely disabled because the only evidence bearing on that finding are the incident involving police and her refusal to take medication. She claims that this "scant" evidence is insufficient to establish that she: (1) is unable to provide for her essential human needs; or (2) has a substantial impairment or obvious deterioration of judgment that results in her inability to function independently. (Appellant's Br. 11).

[14] In response, the Hospital appears to concede that D.S. cannot be found gravely disabled under the first prong of the definition and argues only that D.S. is gravely disabled under the second prong of the definition. (*See* Appellee's Br. 14 (arguing that "lack of evidence that [D.S.] was not able to provide for her essential needs . . . is not fatal" and that "D.S. had an obvious deterioration that affected her judgment and ability to function independently.")). The Hospital then argues that D.S.'s apparent "inability to . . . abide by the normal rules of

conduct[,]'" as shown by the Incident, was sufficient to prove that D.S. was gravely disabled. (Appellee's Br. 15 (quoting Tr. 10)). We disagree.

[15] While Dr. Mayer might have properly considered D.S.'s conduct during the Incident to be contrary to "the normal rules of conduct," (Tr. 10), the Hospital's burden of proof requires more than a showing that D.S. behaved abnormally or idiosyncratically. *Addington*, 441 U.S. at 426-27. Rather, the Hospital needed to have shown by clear and convincing evidence that D.S. lacked the judgment and ability to function independently. *B.J.*, 67 N.E.3d at 1039. Other than Dr. Mayer's diagnosis of psychosis caused by schizoaffective disorder, the Hospital presented no evidence at all, much less clear and convincing evidence, that D.S. could not function independently. The Incident was one isolated event, and while D.S.'s actions during the Incident were unusual, there was no evidence that her unusual conduct prevented her from functioning independently outside the Hospital. *See Addington*, 441 U.S. at 427 (warning against committing individuals based on "a few isolated instances of unusual conduct."). D.S. testified about her ability to work, pay bills, and live independently, and the Hospital presented no contrary evidence regarding her ability to do so.

[16] Further, it is apparent from Dr. Mayer's testimony that his opinion that D.S. was gravely disabled was based solely on the Incident, her denial of her illness, and her refusal to take prescribed medication. We have already noted above that the Incident was not a sufficient basis for regular commitment, and in *T.K.*, our supreme court affirmed that denial of illness and refusal to take medication are likewise not a sufficient basis for commitment. *See T.K.*, 27 N.E.3d at 276

(holding that "denial of illness and refusal to medicate, standing alone, are insufficient to establish grave disability because they do not establish, by clear and convincing evidence, that such behavior results in the individual's inability to function independently") (internal quotation omitted)).

[17] Accordingly, because the only evidence the Hospital presented at trial did not constitute clear and convincing evidence to support D.S.'s regular commitment, we reverse the trial court's decision and remand for the trial court to vacate the regular commitment.

[18] Reversed and remanded.

Vaidik, C.J., and Barnes, Sr.J., concur.