## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 12 2020, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katelyn Bacon
Marion County Public Defender Agency
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Commitment of<br><br>B.E.,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Health and Hospital Corporation d/b/a Sandra Eskenazi Mental Health Center,<br><br>*Appellee-Petitioner,* | November 12, 2020<br><br>Court of Appeals Case No. 20A-MH-1018<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Steven R. Eichholtz, Judge<br><br>The Honorable Kelly M. Scanlan, Commissioner<br><br>Trial Court Cause No. 49D08-2004-MH-13952 |

**Robb, Judge.**

# Case Summary and Issue

B.E. appeals the trial court's order for her involuntary temporary commitment to Sandra Eskenazi Mental Health Center, contending there was insufficient evidence that she was "gravely disabled" due to her mental illness. Concluding sufficient evidence proved B.E. was gravely disabled, we affirm the commitment order.

# Facts and Procedural History

B.E. is sixty years old and lives with her husband and son in a home they have owned for twenty years. She is primarily dependent on her husband's salary for support. She has hypertension and Type 2 diabetes in addition to being diagnosed in August 2018 with Bipolar I Disorder and is prescribed a variety of medications for her conditions. On April 15, 2020, the Health and Hospital Corporation of Marion County, doing business as Sandra Eskenazi Mental Health Center ("Hospital"), filed a petition for the involuntary commitment of B.E., alleging that B.E. suffered from a psychiatric disorder as a result of which she was gravely disabled. Halimah Oral, M.D., filed a physician's statement in support of the petition stating that B.E. has Bipolar I Disorder with psychotic features that substantially disturbs her thinking, feelings, or behavior and impairs her ability to function in that "paranoid delusions . . . prevent her from eating and taking medications for her chronic conditions[.]" Appellant's Appendix, Volume II at 16. Dr. Oral further opined that B.E. is gravely disabled because of a substantial impairment or obvious deterioration in

judgment, reasoning, or behavior that results in her inability to function independently, as she "screams when people try to talk to her or runs away, refuses medications for high blood pressure and diabetes, [and] refuses food[.]" *Id.* at 17. Dr. Oral stated that, in her professional opinion, B.E. "is in need of custody, care, or treatment in an appropriate facility." *Id.* In 2018, B.E. had been hospitalized "with a similar presentation[.]" Transcript, Volume II at 9.

[3] A commitment hearing was held on April 23, 2019. Dr. Oral was the only witness for the Hospital; B.E. testified on her own behalf. Dr. Oral testified that the circumstances of B.E.'s admission to the inpatient mental health unit on April 13 were that she was paranoid, specifically about her husband "trying to take her property and take control of her body"; had been having hallucinations; and was becoming increasingly violent toward family members. *Id*. at 7. Her speech and thought were erratic and irrational, and she was unresponsive to questions. Upon admission, she stated she had not been taking her medications, preferring "an herbal approach." *Id*. She was initially very aggressive toward staff and doctors, requiring "multiple as needed medications" and intervention by security officers to restrain her on April 18. *Id.* On that date, "her aggression rose to the point that . . . she had been defecating on linens and throwing it [on] staff[.]" *Id.* After that incident, she became more cooperative, but continued to refuse all but one medication and refused to speak to Dr. Oral until the day before the hearing. Before the hearing, B.E. told Dr. Oral that her husband would not come pick her up after the hearing and that

she would need a sheriff to transport her home because a taxi might not be taking appropriate COVID-19 precautions.

[4] Dr. Oral testified that for at least a week, B.E. had been exhibiting five core features of a Bipolar I Disorder acute manic episode: irritability, grandiosity, decreased sleep, talkativeness, and distractibility. Dr. Oral noted that Bipolar Disorder is an episodic disorder and that even if B.E. does not take her medications, "with time . . . we may have it resolved and go back to baseline." *Id.* at 9. However, without the medications, "[i]t just might be quite a long time and she might do a lot of harm to her functioning and her family relationships [and] her own self image in that time. And then she would be [at] an increased risk . . . of having another episode." *Id.* With proper medication management, Dr. Oral thought B.E. could be discharged to outpatient care within as little as a week. However, based on her interactions with B.E., Dr. Oral did not believe that B.E. would voluntarily comply with the treatment plan and take her medications on her own because she has no insight into her mental or physical conditions, refusing to believe she "truly has these conditions to the severity that she does." *Id.* at 11. Dr. Oral testified B.E. was gravely disabled as a result of her mental illness and was in danger of coming to harm because her substantial impairment in judgment, reasoning, and behavior affects her ability to function independently.

[5] B.E. disagreed with Dr. Oral's assessment that she is unable to function on her own, giving the example that she directs the money from her husband's paycheck to pay all the household bills and prepares their tax returns every

year. She acknowledged that she refused to take the medications prescribed at the Hospital but explained she would only take medications prescribed by her primary care physician because "nobody else knows my complete medical history." *Id.* at 19. She testified that if discharged, she would be able to return to her home, where she, her husband, and her son each have their own room, but also testified that when she calls the home phone or her husband's cell phone, no one answers and the voice messages have been changed.

[6] At the conclusion of the hearing, the trial court made the following findings:

> The court does find by clear and convincing evidence that [B.E.] is suffering from mental illness, specifically Bipolar I Disorder, manic episode. The court further finds that at this point in time, [B.E.] is gravely disabled in that she is in danger of coming to harm because she is demonstrating a substantial deterioration in her judgment, reasoning and behavior that has resulted in her inability to function independently at this time. The court bas[e]s that on the testimony that we had this morning, including Dr. Oral's testimony that [B.E.] is at increased risk for additional future episodes of mania if she is not being treated. That she has been unable to sleep due to the high energy from her mania. She is easily distracted not only at night but also during the day, which Dr. Oral has observed. She is refusing psychiatric treatment in the hospital and refusing even treatment for her diabetes, which we presume when she is thinking a little more rationally she understands the need for her own . . . health for her diabetes to be treated and for her hypertension to be adequately treated. . . . Her irritability and aggression make it difficult for her to function not only in the hospital but also at home. And she described some paranoid delusions regarding her husband who is her sole provider. And we had her own testimony that he is not answering the phone when she calls, although we do not really know what the reason for that might be at this time. And

so there is concern for a safe discharge plan as well if she is still in — experiencing the manic episode untreated. And so for all these reasons, the court is granting the order of temporary commitment.

*Id.* at 21-22. The trial court's written order determined that B.E. was in need of custody, care, and treatment for a period not to exceed ninety days. B.E. appeals the order of temporary commitment.

# Discussion and Decision

## I. Mootness

When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed. *R.P. v. Optional Behavior MHS*, 26 N.E.3d 1032, 1035 (Ind. Ct. App. 2015). "The long-standing rule in Indiana courts has been that a case is deemed moot when no effective relief can be rendered to the parties before the court." *T.W. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 121 N.E.3d 1039, 1042 (Ind. 2019) (quotation omitted). And although moot cases are usually dismissed, our courts have recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of "great public interest[,]" typically involving issues that are likely to recur. *In re Commitment of J.B.*, 766 N.E.2d 795, 798 (Ind. Ct. App. 2002) (quotation omitted). "The question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society. Indiana statutory and case law affirm that the value and dignity of the individual facing commitment or treatment is of great societal concern." *Id.*

The trial court's involuntary commitment order was issued on April 27, 2020 and was set to expire no more than ninety days later, or July 26, 2020. Thus, B.E.'s period of temporary involuntary commitment has expired, as she acknowledges. *See* Brief of the Appellant at 10. Nonetheless, B.E. contends we may render meaningful relief to her because of the "potential harmful collateral consequences of a civil commitment," *id.*, and asks that we not dismiss her appeal as moot because we would be able to grant her meaningful relief.

Although B.E. does not elaborate on what those collateral consequences are or how a decision by this court now can help her avoid them,[1] we will address her case on the merits, especially considering the Hospital has not filed a brief in opposition.[2]

# II. Proof B.E. Was Gravely Disabled

We will affirm a temporary commitment order if, "considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence."

---

[1] We have previously noted that "serious stigma and adverse social consequences" can accompany physical confinement as a result of a civil commitment, *Commitment of B.J. v. Eskenazi Hosp./Midtown CHMC*, 67 N.E.3d 1034, 1038 (Ind. Ct. App. 2016), but B.E. does not specifically invoke those effects as reasons to consider her appeal.

[2] When the appellee does not file a brief, this court is not required to advance arguments on the appellee's behalf and may reverse if the appellant makes a case of prima facie error. *Neal v. Austin*, 20 N.E.3d 573, 575 (Ind. Ct. App. 2014). Prima facie error is error "at first sight, on first appearance, or on the face of it." *In re Paternity of S.C.*, 966 N.E.2d 143, 148 (Ind. Ct. App. 2012), *aff'd on reh'g, trans. denied.*

*Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273 (Ind. 2015) (quotation omitted). The clear and convincing evidence standard is defined as an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt. *T.D. v. Eskenazi Health Midtown Cmty. Mental Health Ctr.*, 40 N.E.3d 507, 510 (Ind. Ct. App. 2015). In order to be clear and convincing, the existence of a fact must be highly probable. *Id.*

[11] In Indiana, a person may be involuntarily committed if the petitioner proves by clear and convincing evidence that "(1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind. Code § 12-26-2-5(e). Here, the trial court found B.E. to be gravely disabled. Indiana Code section 12-7-2-96 defines "gravely disabled" as:

> a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>
> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

[12] The trial court found that B.E. is suffering from a mental illness and is gravely disabled. B.E. does not challenge the finding that she suffers from a mental illness, but contends the Hospital did not present sufficient evidence that as a

result of her mental illness, she was in danger of coming to harm because she had a substantial impairment or obvious deterioration of her judgment, reasoning, or behavior that resulted in her inability to function independently. Therefore, she argues, the Hospital did not prove by clear and convincing evidence that she was gravely disabled.[3]

[13] In support of her argument, B.E. notes that prior to her hospitalization, she was "already receiving treatment, including medications, without a commitment order." Br. of the Appellant at 14. She took steps to eat healthy and exercise and was self-quarantining to protect herself from COVID-19 exposure. All of this may have been true *prior* to her hospitalization. But the record shows that *at the time of* and *during* her hospitalization, she was not taking her medications, refusing to eat, was not sleeping, and was relating poorly to her husband, who was the primary source of her support. Moreover, she was physically and verbally combative with Hospital staff and doctors during her stay.

[14] As B.E. states, denial of illness and refusal to medicate, standing alone, are insufficient to establish grave disability because they do not establish, by clear and convincing evidence, that such behavior "results in the individual's

---

[3] B.E. also contends the Hospital did not present sufficient evidence that as a result of her mental illness she was in danger of coming to harm because she is unable to provide for her food, clothing, shelter, and other essential needs. *See* Br. of the Appellant at 12-13; Ind. Code § 12-7-2-96(1). The trial court made no findings regarding B.E.'s ability to provide for herself, but because the definition of gravely disabled is written in the disjunctive, the trial court's finding of grave disability may stand if we find sufficient evidence to prove that B.E.'s judgment, reasoning, or behavior was impaired to the extent she could not function independently. *See Commitment of B.J.*, 67 N.E.3d at 1039.

inability to function independently." *Civil Commitment of T.K.*, 27 N.E.3d at 276 (quoting Ind. Code § 12-7-2-96(2)); *see also* Br. of Appellant at 13-14.  And also as B.E. states, a commitment order may not be based on future contingencies.  *Commitment of B.J.*, 67 N.E.3d at 1040; *see also* Br. of Appellant at 14.  But the testimony here goes beyond mere refusal to medicate and denial of mental illness and is largely grounded in B.E.'s state at the time of the hearing.

[15]   Dr. Oral testified that B.E.'s manic episode was causing her to refuse medications for her other conditions, including medication for high blood pressure, which resulted in her blood pressure being "consistently elevated to one eighties – two hundreds; levels that we would consider hypertensive urgency or if there was evidence of any organ damage, hypertensive emergency."  Tr., Vol. II at 11.  She believed if she "was in a calm and controlled environment her blood pressure and her diabetes would normalize." *Id.*  She also refused to eat and was unable to sleep.  All of this puts B.E. in danger of coming to harm from a treatable health issue.  Dr. Oral also testified B.E.'s irritability and aggression "make it difficult [for her] to function at home and on the unit."  *Id.*  Her paranoid delusions about her husband "prevent her from getting along with him[,] . . . her only support and source of income."  *Id.* This puts her in danger of being without shelter or resources.  And defecating in her bed and throwing feces at Hospital staff demonstrates an obvious deterioration in her judgment and behavior.

In other words, Dr. Oral's testimony proves by clear and convincing evidence that B.E. was not able to function independently and was in danger of coming to harm as a result of her mental illness. *See A.S. v. Ind. Univ. Health Bloomington Hosp.*, 148 N.E.3d 1135, 1141 (Ind. Ct. App. 2020) (holding evidence that patient was agitated, continued to display "very inappropriate[]" behavior toward and around hospital staff, and made delusional statements was sufficient to prove by clear and convincing evidence she was gravely disabled due to her substantially impaired judgment); *cf. In re Commitment of D.S.*, 109 N.E.3d 1056, 1061 (Ind. Ct. App. 2018) (holding where commitment was based on denial of illness, refusal of medication, and a single isolated incident prior to hospitalization, evidence was insufficient to support commitment). Accordingly, the trial court did not err in finding B.E. was gravely disabled and ordering her temporary commitment to the Hospital.

# Conclusion

We conclude the Hospital presented clear and convincing evidence supporting the trial court's temporary commitment order. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

Crone, J., and Brown, J., concur.