

IN THE

# Indiana Supreme Court

Supreme Court Case No. 25S-MH-187

## In the Matter of the Commitment of M.C.; M.C.,

*Appellant-Respondent*



FILED

Jul 18 2025, 10:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## Sandra Eskenazi Mental Health Center,

*Appellee-Petitioner*

Decided: July 18, 2025

Appeal from the Marion Superior Court
No. 49D08-2405-MH-20495
The Honorable David J. Certo, Judge
The Honorable Sarah J. Glasser, Magistrate

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-MH-1364

**Per Curiam Opinion**

Chief Justice Rush, and Justices Massa, Goff, and Molter concur.
Justice Slaughter dissents.

**Per curiam.**

In *J.F. v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 256 N.E.3d 1260 (Ind. 2025), we held that the appeal of a temporary commitment order is not moot—even if the commitment has expired—unless the **appellee** shows that there are no collateral consequences from the commitment. Before we handed down *J.F.*, the Court of Appeals dismissed M.C.'s appeal as moot, finding the commitment order had expired and **appellant** M.C. failed to identify any particularized collateral consequences stemming from his commitment.

Because the Court of Appeals dismissal is at odds with *J.F.*, we grant transfer to vacate the decision. We also find that sufficient evidence supports M.C.'s commitment and thus affirm the trial court's temporary commitment order.

## I.  Background and Procedural History

M.C. arrived at the Sandra Eskenazi Mental Health Center on May 6, 2024, exhibiting manic behavior. Eskenazi sought—and the trial court granted—emergency involuntary detention. Two days later, Eskenazi petitioned to temporarily commit M.C.

At the May 16 temporary commitment hearing, Dr. Jayme Ahmed testified M.C. reported a prior schizophrenia diagnosis but, because M.C. disagreed with that diagnosis, he had not taken medications. Dr. Ahmed observed M.C. exhibit delusional behavior and disorganized speech—both symptoms consistent with schizophrenia or psychosis unspecified. M.C. told Dr. Ahmed several times he needed to go to police headquarters in Washington, D.C., to broadcast a "state of emergency." And if discharged, M.C. planned to call his father for bus fare to the capitol. M.C. refused medication and treatment at Eskenazi, telling Dr. Ahmed "his situation is real." M.C. also told Dr. Ahmed that his social security benefits had stopped. Dr. Ahmed believed that, if discharged, M.C.'s fixation on Washington, D.C., and his lack of stable income would impair his ability to provide himself with food and shelter.

M.C.'s testimony is difficult to follow. He testified that he quit his job in California to "go to Washington D.C., to try and get a speech broadcast." He traveled from California to his mother's home in Grant County where he filed a "state of emergency." M.C. claimed the secret service visited him in Grant County because he went to the White House. M.C. reported that Grant County authorities arrested him for public intoxication and sleeping outside, and he faced additional criminal charges for making improper 911 calls. M.C. testified authorities transported him to an Indianapolis homeless shelter on May 1 for "protective custody from people staying in the [Grant County] jail." M.C. then called an ambulance for a toothache and eventually arrived at Eskenazi. There, M.C. refused medication because he thought it was for "somebody with body function problems" and he was concerned about the "bio symptoms." M.C. believed he could care for himself upon discharge, testifying that he planned to return to the Indianapolis shelter to charge his phone and call family members for help.

The trial court ordered M.C.'s temporary commitment, finding M.C. was gravely disabled. M.C.'s commitment expired August 14, 2024.

M.C. appealed, arguing Eskenazi presented insufficient evidence that he was gravely disabled and that his case was not moot. The Court of Appeals dismissed the appeal as moot, finding M.C. failed to demonstrate particularized collateral consequences of his commitment. *M.C. v. Sandra Eskenazi Mental Health Ctr.*, No. 24A-MH-1364 (Ind. Ct. App. Feb. 28, 2025) (mem.).

## II. The Court of Appeals decision conflicts with *J.F.*, and sufficient evidence supports the commitment.

In *J.F.*, we determined that "just like criminal convictions and CHINS findings, temporary commitment orders, if invalid and left undisturbed, carry with them potentially harmful collateral consequences." 256 N.E.3d at 1269. Accordingly, "timely appeals of temporary commitment orders generally do not become moot when the orders expire." *Id.* We recognized, however, that an "exceptional case" may exist where there is

no potential for collateral consequences. *Id.* In those cases, the appellee must make that extraordinary showing. *Id.*

Though decided without the benefit of *J.F.*, the Court of Appeals decision conflicts with *J.F.* in two ways: first, by finding the appeal was moot, and second, by improperly placing the burden on M.C. to show collateral consequences. We thus grant transfer to vacate the Court of Appeals decision. Ind. Appellate Rule 58(A).

To temporarily commit M.C., Eskenazi had to prove by clear and convincing evidence that M.C. was mentally ill and gravely disabled, and that M.C.'s commitment was appropriate. Ind. Code § 12-26-2-5(e). A person is gravely disabled if he, "as a result of mental illness, is in danger of coming to harm" because he "is unable to provide [himself with] food, clothing, shelter, or other essential human needs" or "has a substantial impairment or an obvious deterioration of [his] judgment, reasoning, or behavior that results in [his] inability to function independently." I.C. § 12-7-2-96.

When we review a sufficiency challenge, we neither reweigh evidence nor assess witness credibility. *In re Commitment of T.K.*, 27 N.E.3d 271, 273 (Ind. 2015). We will affirm a commitment order if, "considering only the probative evidence and the reasonable inferences supporting it, … a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence." *Id.* (citation omitted, alteration in original).

In dictum, the Court of Appeals suggested it would have affirmed the commitment order if it had reached the merits of M.C.'s sufficiency argument. It wrote, "Eskenazi established M.C. was gravely disabled in that M.C. was operating in a delusional state, lacked a source of income, and, though generally aware of options for shelter … insisted he had the urgent responsibility to work with law enforcement and travel to Washington, D.C., to address a perceived state of emergency." *M.C.*, No. 24A-MH-1364, at *10 n.2. Upon review of the record, we agree.

The probative evidence supporting the commitment order shows that M.C. was fixated on going to Washington, D.C. He refused treatment, believing his delusions were real. We acknowledge there is some evidence

M.C. planned to call his family for money or shelter upon discharge. But the trial court apparently gave more weight and credibility to Dr. Ahmed's concern that M.C.'s fixation on Washington, D.C., and lack of independent financial resources would impair his ability to provide for himself. Because our standard of review restrains us from reweighing evidence, we find that the trial court could reasonably conclude that clear and convincing evidence supported M.C.'s temporary commitment.

## Conclusion

We grant transfer to resolve the conflict between *J.F.* and the Court of Appeals decision in this case. We find sufficient evidence supports M.C.'s commitment and affirm the trial court's commitment order.

Rush, C.J., and Massa, Goff, and Molter, JJ., concur.
Slaughter, J., dissents, believing that transfer should be denied.

ATTORNEYS FOR APPELLANT
Talisha R. Griffin
Casey A. Farrington
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Bryan H. Babb
Seema R. Shah
Bose McKinney & Evans LLP
Indianapolis, Indiana